WILLIAMS *v.* ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY.

Opinion delivered May 6, 1912.

TRIAL—DIRECTING VERDICT.—In determining on appeal the correctness of the trial court's action in directing a verdict for either party, the rule is to take that view of the evidence that is most favorable to the party against whom the verdict is directed; and where there is any evidence tending to establish an issue in favor of such party, it is error to take the case from the jury.

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; reversed.

STATEMENT BY THE COURT.

This suit was brought by appellants against the railroad company for damages for the destruction of a dwelling house and furniture therein, in the city of Fayetteville, Arkansas, alleged to have been caused by fire communicated by sparks escaping from one of its engines.

It was alleged that the insurance company issued certain policies of insurance to W. R. Williams, covering $900 valuation on the dwelling and $800 on the furniture, and that the house and furniture were destroyed by fire caused and communicated by sparks escaping from appellee's engine in the operation of one of its trains, and that the insurance company adjusted and settled the losses by paying $1,500 to the insured, at the same time taking from him a tranfer of his cause of action against the railroad company for damages for the destruction of the property under a subrogation provision in the policies. A copy of this agreement was exhibited with the complaint.

The answer denied the allegations of the complaint.

The house and furniture were entirely destroyed by fire on March 19, 1910, the family all being away from home at the time. The house was situated somewhat in a curve of the railroad, and from sixty to sixty-one feet from the nearest point of the track.

The witnesses on appellant's part testified that some time between 7:30 and 8:00 in the evening a freight train on appellant's road passed, going north, emitting a considerable amount of sparks; that the engine was throwing out more sparks and fire than usual; that the sparks were flying rather

high and a strong wind was blowing toward the house; that within half an hour after the passing of the train the house was discovered to be burning fiercely, and the fire alarm was turned in.

One witness testified that he lived about 100 yards from the house destroyed, there being one house between it and his residence; that he was at home when the fire occurred, and saw the train passing about twenty or thirty minutes before the fire alarm sounded; that he was at supper at the time, and noticed through his dining room window the train especially, because the engine was throwing out a good deal of fire and sparks; that he had just stepped out of his house when the fire bell rang, and saw the house on fire, and went immediately over there. "It was the house of plaintiff, Williams, and it was burning on the roof. When I got over to the house, it was burning down from the roof."

Other witnesses testified that the house was burning on the side next to the railroad when the fire was discovered by them.

A witness for appellee, testified that she was standing on the railroad track talking to another woman and stepped off as the train passed, that she then saw a light through the window in the room of the house, a flickering light, as though a lamp was being turned up high and then turned down.

Some employees of the railroad company stated that they saw the fire through the windows inside the room of the house, when it was no greater than the height of a man, and several other witnesses testified that when they reached the scene the fire was raging inside of the house, among the partitions and flames bursting out through the windows and out from under the edge of the roof; that they did not see any fire at all on the outside of the building, except as it came out the windows and from under the eaves.

Williams, the insured, testified that the family had gone to the country that day. That he was at home about 5 o'clock to make his toilet, before going to his sister's for supper. That he knew there was no fire in the kitchen range, for he put the bowl in which he washed his face upon the stove at the time, and that he did not think there was any fire in the

stoves in any of the other rooms.  That he did nothing whatever, while there, that could have started the fire.

Another witness, a boy, testified, that he went to the house about 6:30, and that one of the doors was open, and that he went inside, but saw no indication whatever of any fire in the stoves in the building.

The court directed a verdict for the defendant, and from the judgment this appeal comes.

*E. B. Wall*, for appellant.

The court erred in instructing a verdict for the defendant. There was evidence, legally sufficient, from which the jury might have found that the fire was caused by sparks emitted from the defendant's engine.  89 Ark. 273.

Where there is any evidence tending to establish an issue in favor of the party against whom a verdict is directed, it is error to take the case from the jury.  89 Ark. 372; 84 Ark. 57; 62 Ark. 63; 71 Ark. 447; 63 Ark. 94; 77 Ark. 556; 97 Ark. 56, and cases cited.  See also 80 Ark. 292; 82 Ark. 3, 7.

*W. F. Evans* and *B. R. Davidson*, for appellee.

In view of the evidence, the jury could not have reasonably inferred that the engine set the fire; hence it was the duty of the court to direct a verdict for the defendant.  13 Am. & Eng. Enc. of L. 443; 33 Cyc. 1395-6; 86 Wis. 466; 94 Wis. 270; Elliott on Railroads, § 1243.

KIRBY, J., (after stating the facts).  This court said in *Catlett* v. *Railway Company*, 57 Ark. 461: "When the whole case appears to have been developed—that is, the plaintiff has adduced evidence tending to prove all the facts obtainable to sustain his complaint—and the undisputed evidence is so conclusive that this court would be compelled to reverse the judgment based upon a verdict in its favor, the court should withdraw the case from the jury, and direct a verdict for the defendant."

In *Jones* v. *Lewis*, 89 Ark. 372, the court said:  "In determining on appeal the correctness of the trial court's action in directing a verdict for either party, the rule is to take that view of the evidence that is most favorable to the party against whom the verdict is directed.  *Lafayette* v. *Merchants Bank*, 73 Ark. 561; *Rodgers* v. *Choctaw, O. & G. Rd. Co.*, 76 Ark.

520. And where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury. *St. Louis, I. M. & S. Ry. Co.* v. *Petty,* 63 Ark. 94; *Wallis* v. *St. Louis, I. M. & S. Ry. Co.,* 77 Ark. 556; *St. Louis, I. M. & S. Ry. Co.* v. *Vincent,* 36 Ark. 451; *Overton* v. *Matthews,* 35 Ark. 146; *Boyington* v. *Van Etten,* 62 Ark. 63; *Fidelity Mutual Life Ins. Co.* v. *Beck,* 84 Ark. 57."

The testimony of appellants tended to establish the fact that the train passed, shortly before the house was discovered to be on fire, emitting an unusual amount of sparks and fire, which were thrown high and scattered by a strong wind on both sides of the track; that there was no way in which the fire could have originated from within the house, and that it was first discovered to be burning upon the roof on the side next to the railroad track.

This evidence, if undisputed, and the fire not otherwise accounted for, would have warranted the inference that it was caused by the sparks and fire emitted from the railroad engine, and sustained a finding by the jury to that effect. *Central Ark. & E. Ry. Co.* v. *Goelzer,* 92 Ark. 570; *St. Louis S. W. Ry. Co.* v. *Trotter,* 89 Ark. 273; *Missouri & N. A. Rd. Co.* v. *Phillips,* 97 Ark. 56.

It is true that the preponderance of the testimony was against this version of the origin of the fire, and tended strongly to establish the fact that the house was closed, so the sparks from the train could not have entered it, and that the fire originated within the house; several of the witnesses testifying that, when they reached the scene, there was no fire on the outside, except as it burst through the windows and out from under the eaves of the house.

But the appellant's evidence was entitled to its strongest probative force on consideration of the question of directing a verdict; and, since it tended to establish the issue in their favor, the question should have been left to the determination of the jury, and it was error to withdraw the case from them and direct a verdict against appellants. *Jones* v. *Lewis, supra.*

For this error the judgment is reversed, and the cause remanded for a new trial.