## FARMERS' BANK v. JOHNSON.

### Opinion delivered October 14, 1912.

APPEAL AND ERROR—DIRECTING VERDICT—REVIEW.—Where there is any evidence tending to establish an issue in favor of the party against whom a verdict is directed, it is error to take the case from the jury; and in determining on appeal the correctness of the trial court's action in directing a verdict for either party the rule is to take that view of the evidence that is most favorable to the party against whom the verdict is directed.

Appeal from Searcy Circuit Court; *Geo. W. Reed,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellant brought suit against W. S. Johnson, I. R. Goodman and others, alleging that they were indebted to the State of Arkansas in a certain amount, on a note given for the payment of fines adjudged against W. S. Johnson; that they purchased of said bank the sum of $400 in Searcy County scrip at ninety-five cents on the dollar, with which to pay said note; that the other defendants, except Goodman, came to the bank on the 16th day of August, 1909, and agreed that they would execute their note to the bank in the sum of $380 with 10 per cent. interest, due in ninety days, for said scrip; that Goodman came in later; and said he was getting old and preferred that he and the others should pay the amount in cash; that the other defendants signed the note dated on said date for the amount; and that later, on September 6, the defendant Goodman came to the bank and requested it to accept $100 in cash and the said note as security for the payment of the said $380, the purchase price of the scrip, but they refused to do so; that

Goodman thereupon deposited the cash with the plaintiff, and requested it to allow the business to remain in that condition until he could see the other defendants and ascertain whether they would pay the other $280 in cash on the indebtedness, and said that if they declined to do so he would pay the said sum in cash, or sign the note along with the other defendants; that upon this promise, and upon his direction, it delivered the scrip to the sheriff in payment of the note held by him; that the cash deposit made by Goodman with the note was held in the bank, subject to the order of the defendant, and that no part of the $380 agreed to be paid for the scrip had been paid, etc.

The defendants answered separately, denying the allegations of the complaint. W. T. Givens denied each allegation in the complaint, denied any authority of any of the parties to bind him to pay for the scrip or any liability therefor.

I. R. Goodman adopted the answer of W. T. Givens for his own, denied any indebtedness whatever to the bank, and pleaded the statute of frauds.

Copies of each of the notes were exhibited with the complaint, and the cashier of the bank testified that in August, 1909, he wrote the defendant, I. R. Goodman, offering to sell him some county scrip; that Goodman replied that he would be at the bank about a certain time and came on the day mentioned, and he sold him the scrip. Before Goodman came over, W. S. Johnson and some of the other defendants had called at the bank and taken out a note to be executed for the scrip. When Goodman came in, he pulled said note out of the drawer that had been signed by W. S. Johnson and the others and told Goodman to sign the note. He said that he was getting old, and that he had already been out some money on Bill Johnson, and would rather pay his part of it and be released, that he told him he would not let the scrip go unless he signed the note and the scrip was paid for, and "Goodman replied that he would sign the note or pay for the scrip, and told me to go ahead and let them have the scrip. I sold him the scrip at ninety-five cents on the dollar, and it amounted to $380. Goodman said: 'Give the scrip to Bill Johnson and he would give it to Barnett.' I gave a check on the Marshall Bank for the scrip, and made the check direct to

Barnett, and it was payable in Searcy County warrants."

"I sold the scrip on the promise of I. R. Goodman. At the close of the deal, he said that he would go and see the boys, and they would either come in and pay it off or come in and sign the note up, and as he started out he pulled out $100 from his pocket and said, "I have a hundred dollars here that I might leave. I may need it in the deal for my part,' and left it and I gave him a receipt for it. The $100 has never been paid on the debt, nor has anything else been paid or delivered in settlement of the debt and the whole $380, together with the interest on it, is due and unpaid."

On cross examination, he said that only W. S. Johnson and I. R. Goodman of the parties interested were present at the time he let them have the scrip, but the others had been in to see about it before that, but didn't close a deal.

He answered further as follows:

"Q. At the time I. R. Goodman was in the bank, as you have stated, did you inform Mr. Goodman that you would accept his proposition and let the scrip out? A. No, I didn't; he said he would come back and sign the note or pay for the scrip. Q. Yet you went on and let the scrip out? A. Yes, sir; because I thought he would do what he said he would do. Q. You did not tell him that you would let the scrip out on what he had said? A. No, sir.

W. S. Mays, the father of the cashier, testified that he was in the bank at the time Goodman was talking to his son, the cashier, about the purchase of the scrip and heard him say he was getting old and wanted to get rid of such notes as that, and had some money to leave there for his part. That he did leave $100, but that he had forgotten just how he said it should be applied. "He had promised to go on the note with the other parties. I believe it was his son-in-law. If it couldn't be made without him going on it, he would sign it. Ed, my son, told me he considered he was the only responsible party in the whole deal."

Another witness testified that Goodman told him afterwards that he had fixed it at the Farmers' Bank for the Johnson note to be paid off, and he would have to pay it all unless the others would do what they agreed to do. He said he had

made an arrangement at the bank for them all to pay their part and pay off the debt, etc.

The sheriff of the county testified that Bill Johnson handed him the order from Ed Mays for the $400 in county scrip, which he took in satisfaction of the note.

The court thereupon instructed the jury to return a verdict for the defendants, and from the judgment thereon the bank appealed.

*S. W. Woods*, for appellant.

1. The facts in this case do not bring it within the statute of frauds. 12 Ark. 174; 22 How. 28; 45 Ark. 67; 42 Ark. 285; 40 Ark. 429.

2. The court erred in directing a verdict for appellees. 76 Ark. 520; 71 Ark. 445; 71 Ark. 303; 63 Ark. 94.

*E. G. Mitchell*, for appellee.

The case falls within the statute of frauds. Kirby's Dig., § 3654; Lawson on Contracts, 108; 1 Ark. 415; 1 L. R. A. (N. S.) 445 and note; 2 McCrary 167; 7 Fed. 81; 94 Ill. App. 6; 110 Ga. 142, 35 S. E. 280.

KIRBY, J., (after stating the facts). The testimony on the part of the appellant tends to show that the bank cashier sold and delivered the scrip for the sum of $380 on the promise of I. R. Goodman to pay the whole amount in cash if he could procure $280 of it from the other defendants, or execute the $380 note in payment therefor, in case the cash was not paid.

It is true, he made a statement also that he did not tell Goodman that he would let the scrip out on what he said, but, from his answers to the other questions at the time, it is probable this statement was made relative to selling the scrip upon the Goodman proposition to pay the $100 in cash himself and keep the note of the other defendants for the payment of the balance.

Where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury; and in determining on appeal the correctness of the trial court's action in directing a verdict for either party, the rule is to take that view of the evidence that is most favorable to the party against whom the

verdict is directed. *Williams* v. *St. Louis & S. F. Rd. Co.,* 103 Ark. 401.

If no other testimony had been introduced upon the trial, and the jury had returned a verdict in favor of appellant, it could not have been reversed for want of sufficient testimony to support it, and the court erred in directing the verdict against it.

The case does not appear to have been fully developed, and for said error the judgment is reversed, and the cause remanded for a new trial.