FORDYCE LUMBER COMPANY *v.* LYNN.

· Opinion delivered May 19, 1913.

1. MASTER AND SERVANT—INJURY TO SERVANT—SIMPLE TOOLS—LIABILITY—SAFE APPLIANCES.—In an action for damages for personal injuries sustained by plaintiff while using one of a number of sticks pointed at the end and six feet long, while unchoking a lath machine in a saw mill, the sticks being taken from another department of the lumber mill because of their size, to be used for this specific purpose, the sticks will be held to be simple tools, which the defendant master need not inspect in the performance of his duty to provide safe appliances for his servants. (Page 386.)

2. MASTER AND SERVANT—ASSUMPTION OF RISK.—Where an employee in a saw mill used a stick intended for the purpose, to unchoke a lath machine, and was injured by the breaking of the stick due to a defect easily seen, when he acted without direction from his employer, he will be held, as a matter of law, to have assumed the risks arising from the defects in the stick. (Page 387.)

Appeal from Dallas Circuit Court; *Henry W. Wells,* Judge; reversed.

STATEMENT BY THE COURT.

Appellee brought this suit against the Fordyce Lumber Company for damages for personal injuries resulting in the loss of his right hand, which occurred while he was unchoking, or cleaning out, a sawdust box, or chute, at the lath machine at which he was employed.

The negligence alleged was that the lumber company had failed to exercise reasonable care to furnish him a reasonably safe place and reasonably safe instrumentalities with which to perform his work; specially, that it failed to exercise ordinary care in furnishing him a stick,

not reasonably safe and strong, to be used in unchoking said lath machine when the saws of same should become obstructed by dust or debris, and that by reason of said negligence, he received the injury complained of.

The answer denied any negligence, and plead assumption of risk and contributory negligence in bar of the action.

Appellee was twenty-three years old when the accident occurred, and had been working for the lumber company about nine months. He first worked at the lath machine in catching stock. He also worked, putting slabs in the long conveyor chain that runs out to the fire. He was changed from first one place to the other, and worked mostly at tying lath behind the little machine, and had worked at the little lath machine tying lath before he was hurt, about fifteen days. Before he began work at this machine, he was told by the foreman to go upstairs and tie lath, and be particular to keep the lath machine going. His regular duty on the day he was hurt was tying lath. It was the duty of the feeder to unchoke the sawdust chute, and of the tyer to take the feeder's place and keep the machine going during his absence. The machine at which he was hurt was about three feet long, and in the middle of it there are three saws about eighteen inches in diameter that run a quarter of an inch apart, and about an inch and a quarter of which project up above the surface of the table. The feeder pushes the lath in the saws, and they are held in place by a guide which pushes the lath, and the grader then takes the bundle. The saws are about eighteen inches in diameter. The sawdust box was on the front side of the machine beneath the saws. The lath machine sometimes choked up. There was a dust trough to the left of the machine. The dust pit or box was three feet at the top and six inches at the bottom. To get the sawdust out of the box or receptacle, you take a stick six feet long, and with it you push the sawdust and other particles falling from the laths gradually down to the lower part of the sawdust receptacle. One man worked the stick down from above where the sawdust went out of the box, and then a man below the

mill floor worked up toward him. The box sometimes became choked for the reason that it was tapering—it was smaller at the bottom than at the top. A small piece of lath would get in the box, and the sawdust would get in there and choke. When the sawdust got up to the saws, it would smoke.

Appellee was feeding the machine when he was hurt, the regular feeder having gone over to the store, and had run about three bundles through it. His brother was tying and grading also. When he was injured, he was unchoking the lath machine, and described the occurrence as follows: "In unchoking the machine, I took a stick about six feet long, and worked it down to where I supposed was the bottom of the pit where the narrow part came in. I would have to put my weight on the stick and work it gradually. When I had worked the stick to the bottom, another man worked up to it from beneath, and sometimes the sawdust would slip down five or six inches and hang again. I think about the time the stick struck the bottom, it overbalanced me, and I struck the saw. The saws were right in front of me. Another time I was working the stick down, there was a hole in the floor beside the man where I was working. The pit that received the sawdust was between me and the saws. I had to lean over in order to work the stick down. The trough or sawdust pit was to my right, and I stood in front of the machine. My right hand was next to the machine. I was unchoking it and the sawdust pit in front of me. I could not push the stick through the sawdust without working it in the manner just stated. The teeth of the saw which hurt me were about one and one-fourth inches long. I did not shut the machine down when I began to unchoke the sawdust spout. It had never been the custom to do this. I had never seen anybody else shut it down. The three saws were located about six and a half or eight and a half inches from the edge of the table. The table through which the saws ran was a flat one, and had an apron attached to it. The apron was iron. While I was working the stick down, it broke in two as I was leaning forward. My right hand went into the saws. It

went under the table and came in contact with the saw. I received a cut on my hand, and had the hide of this finger knocked off. My right hand was cut so badly that nothing but the little finger was left. It is cut off just above the thumb and cut right straight across down to the root of the little finger. All of the fingers and the thumb, except my little finger, are gone. The little finger is perfectly stiff. I got the stick I was using near the end of the stairway that goes up in the room. Mr. Wells had put the stick there.

''There were six or eight sticks in the pile piled up near the steps of the fire room, and I went around about eight feet from where I was and picked one up. I could have picked up any stick I might have selected. I didn't look at the stick.''

Witness's brother went down below, and was working from the bottom with a stick up the chute, and pulled out a piece of the stick that broke off when appellee was using it from above. He said the stick was cross grained and broke in two, and split diagonally about two and a half inches at the point of breaking. The sticks were about five feet long and about an inch square, with one end somewhat sharpened. They had been taken off the slasher saws, and it seems as though no special effort was made to furnish any particular grade of stick for the purpose. Another witness testified that what was meant by the grain in lumber was the stripes that run lengthwise in a stick. The grain runs lengthwise, usually, and it isn't true that it will break in two on account of the cross grain in handling it unless it is rotten

The court instructed the jury, which returned a verdict against the lumber company, and from the judgment thereon, it appealed.

*T. D. Wynne,* for appellant.

1. There is no duty resting on the master to inspect those common tools and appliances with which every one is conversant. The servant assumes those risks. 1 Labatt on Master and Servant, § 154, p. 331; 4 Thompson on Negl. (2 ed.), § 4708; 55 Ark. 484; 88 *Id.*

36; 82 S. W. 1026; 118 Pac. 764; 99 *Id*. 131; 78 N. W. 572;
47 N. Y. S. 285; 101 N. Y. 396; 5 N. E. 56; 98 Fed. 192;
29 Pac. 175; 69 N. W. 352; 71 Atl. 649; 68 N. E. 936; 116
Am. St. 373; 76 N. W. 497; 51 S. W. 874; 71 Atl. 649; 74
N. W. 91; 47 N. E. 1012; 51 N. W. 350; 69 N. W. 352; 90
Ark. 392; 57 *Id*. 506.

2. Appellee contributed to his injury by his own
negligence. 66 Ark. 239; 90 *Id*. 392.

3. The mere fact that the stick broke will not raise
a presumption of negligence. 90 Ark. 331; 89 *Id*. 52.

*Powell & Taylor,* for appellee.

1. The simple appliance rule does not apply to this
case. 26 Cyc. 1136-8; 20 A. & E. Enc. Law (2 ed.), 89; 4
Thomps. on Negl. (2 ed.), § 4708; 1 Labatt on Master and
Servant, § 154, p. 331; 64 S. E. 65; 54 So. 252; 138 S. W.
1150; 49 N. E. 854; 92 N. W. 535.

2. The appliance causing the injury was defective
when originally furnished. It was not open, obvious and
patent. It was selected by the foreman and used in obe-
dience to his commands. 138 S. W. 1150; 49 N. E. 854;
92 N. W. 535; 88 Ark. 36; 82 S. W. 1026; 56 Kan. 109;
134 Ind. 226; 118 Pac. 764; 54 So. Rep. 252; 132 Ga. 221;
78 N. W. 572; 30 Fed. 925; 18 N. Y. App. Div. 223; 101
N. Y. 396; 92 Ark. 350; 88 N. W. 758.

3. Recovery has been allowed for defects in simple
instruments and appliances in 96 Fed. 446; 50 N. E. 657;
49 *Id*. 854; 69 Pac. 184; 73 N. E. 540; 75 N. E. 1093; 54
L. R. A. 456; 205 Pac. 305; 67 N. E. 342; 87 N. Y. S. 1031;
56 Fed. 1009; 58 N. W. 878; 9 S. W. 790; 46 Minn. 18; 66
Ark. 237; 95 *Id*. 588; 144 Mass. 229; 137 Mass. 204; 47
S. W. 311; 100 Ind. 181; 55 Ill. 234; 56 Ark. 206.

4. In the absence of knowledge on his part the ser-
vant has a right to presume that the master has per-
formed the duty which he has assumed. 1 Labatt on M.
& S., pars. 7-14; 26 Cyc. 1204; 88 Ark. 181; 90 *Id*. 233; 91
*Id*. 343; 91 *Id*. 389; 48 *Id*. 334; 119 S. W. 73; 92 Ark. 350.

5. The servant does not assume the risk. 77 Ark.
374; 77 *Id*. 458; 89 *Id*. 424; 92 *Id*. 102; 95 *Id*. 291. There
is no burden of inspection or examination placed on the

servant. 48 Ark. 333; 101 *Id.* 197; 2 Labatt on M. & S.,
§ 603, p. 1743; 47 N. E. 1012; 93 Ark. 569; 121 S. W. 273;
152 U. S. 684; 83 Ark. 318; 78 Tex. 486; 82 Ark. 372; 4
Thomps. on Negl., par. 3803 c.; 88 Ark. 181; 100 *Id.* 465;
151 S. W. 1005.

KIRBY, J., (after stating the facts). It is insisted for
appellant that the rule of law, devolving the duty upon
the master to exercise ordinary care to provide the ser-
vant with reasonably safe instruments and appliances for
the performance of his work and to exercise ordinary
care in the inspection thereof, has no application to the
facts of this case, which, it is insisted, comes within the
exception to the rule, relating to simple tools and appli-
ances, and that the court should have directed a verdict
in its favor.

The instrument complained of in this instance was
a common ordinary stick or strip about six feet long and
one inch square, pointed at the end, and its structure and
grain were obvious and as easily comprehended by the
servant as the master and by one man as another. The
sticks were not manufactured for the particular use ex-
cept the sharpening at one end, and were selected from
another department of the mill on account of their length
and size adapting them to the use to which they were put.
There was no dangerous machinery in the chute, in the
cleaning out and unchoking of which the sticks were to be
used, with which the person using it could come in con-
tact, and the sticks were not expected to last perma-
nently or long, and were likely to be broken or split and
destroyed in the using, as was apparent from the number
supplied. Appellee acted upon his own initiative, and
without direction from any one, and could consume as
much time in unchoking the sawdust chute as was neces-
sary without hurry or haste, and when the chute choked
up, walked around the machine to where the pile of sticks
lay, some six or eight feet away, and picked up one of
them for that purpose while his brother went downstairs
to assist from below. The stick was an instrument or
appliance as simple as any that can be used in the per-
formance of any kind of work.

Thompson on Negligence, says (vol. 4, sec. 4708 2 ed.): "A servant assumes the risk of injuries from simple and ordinary appliances and methods, the nature of which he understands, or which is easily understood. It is a part of this doctrine that the duty of inspection by an employer of the appliances used by his employees does not extend to the small and common tools of every day use, of the fitness of which the employees using them may reasonably be supposed to be competent judges."

In Labatt on "Master and Servant," vol. 1, sec. 154, p. 331, it is said: "That the duty of inspection does not extend to the small and common tools of every-day use, of the fitness for use of which the employees using them may reasonably be supposed to be competent judges."

In *Masich* v. *American Smelting & Refining Co.,* 118 Pac. 764, a case where the plaintiff was injured by getting his hand caught between rollers in a rock crusher about which he had been employed for some time; his work required him to shovel ore into the breakers, and when a rock became lodged in the crushers or rollers, to push it through with a stick, for which purpose the company furnished sticks cut from rough pine boards. While attempting to push some rock through the rollers with a pine stick three feet long, one inch wide and half an inch thick, his hand and arm were drawn between the rollers and crushed. It was alleged that the smelting company was negligent in furnishing him a defective stick, the surface of which was rough and splintered at the point where plaintiff took hold of it, and that by reason of its condition, his glove on his right hand became fastened to the stick, and was held by it so that he could not withdraw his hand from the glove or turn the stick loose, by reason of which his hand and arm were drawn between the rollers and crushed.

The court held that the stick was a simple appliance, and that no negligence could be imputed to the master for the failure to inspect it, and quote in support of the decision from the opinion in *Longpre* v. *Blackfoot Milling Co.,* 99 Pac. (Mont.) 131, as follows:

"Among the practical duties incumbent upon him (the master) is that of inspection of the machinery and appliances to discover defects in them, both at the time of furnishing them and during the course of the employment; for this is the only means by which he may guard the safety of those employed by him in the use of them. * * * But it is not always absolute. It is not the duty of a railroad company or other persons engaged in great industrial enterprises, to inspect, much less to test, every tool or appliance put in the hands of an employee; this duty arises only when the appliance is of such character that a man of ordinary prudence would, under the same circumstances make the inspection as a precaution against injury to his servant. The master is not required to inspect simple appliances, such as hammers, saws, spades, hoes, lanterns, push sticks, and the like, the character and use of which are understood by all alike. A tool of this class is so simple in its construction, so well understood by men of ordinary intelligence that it would seem absurd to say that the master should make careful inspection of it before he commits it to the hands of his servant, who has the same capacity to understand its character and uses that he, himself, has." Continuing, it said:

"The cases cited and relied upon by this court in the Longpre case above, fairly illustrate the exception to the rule, which requires that the master shall inspect the appliance which he furnishes to his servant. So long as it is the rule of law that the master is relieved from the duty of inspecting simple tools and appliances, and that burden is imposed upon the servant, the rule must be susceptible of application, or it becomes a protection to the master in theory only, and is without practical value. * * * The complete description of the instrument as given in the record is a pine stick three feet long, an inch wide and one-half inch thick. If it was not a simple tool or appliances, then we are unable to imagine what application the term "simple" can have when used to characterize the instrumentalities of any occupation."

In *Ry.* v. *Larkin,* 82 S. W. (Tex.) 1026, a case where a brakeman complained of the railroad's failure to inspect a lantern furnished him, which, by reason of some defect not patent to ordinary observation, exploded and injured him, the court said:

"It is not the duty of a railroad company to inspect every implement and tool that it furnished to its employees. That duty arises whenever the machinery or implement is of such character that a man of ordinary prudence will, under the same circumstances, inspect the machinery or implements as precaution against injury to the servant.   *   *   *   A master is not required to inspect the common tools and appliances which are committed to the custody of a servant who has the capacity to understand their character and uses.   *   *   *   If this requirement were sustained, then every farmer or housekeeper who furnished an ax to his or her servant with which to cut wood for use on the premises, or for other purposes, must use that care which would here be required with regard to the lantern by inspection to discover the condition of the axe before he purchased it, and during the use of it by his servant, he must keep up the order of inspection in order to insure safety.   *   *   *   Likewise, it is a matter of common knowledge that a lantern globe is one of the simplest appliances that can be furnished to a servant for use as well as being in common use; and the court knows, as a matter of law, that it does not require special knowledge or skill to understand the lantern; nor is there any reason why the servant who handles it should not be fully acquainted with its condition, especially when, as in this case, it is committed to his exclusive control and care. There may be, and doubtless are, cases, in which it is a question of fact that should be submitted to the jury, as to whether the machinery or implements, tools and the like were of such character as to require inspection and safeguard against the injury; but there was no reason for submitting the question to the jury in this case."

See also *Sterling Coal Co.* v. *Fork,* 141 Ky. 40, 131 S. W. 1030, 40 L. R. A. (N. S.) 837, and case note on

page 832 thereof; *Vanderpoole* v. *Partridge,* 112 N. W. 318, 13 L. R. A. (N. S.) 668, and authorities in case note; *Sheridan* v. *Gorham Mfg. Co.,* 66 Atl. 576; 13 L. R. A. (N. S.) 687.

The defect or cross grain in the stick, selected by the servant from the number supplied, was obvious and patent, and as easily discovered by the servant as it could have been by the master, and, it being a simple tool, no duty devolved upon the master to inspect it, and appellant assumed the risk attendant upon its use.

In *Marcum* v. *Three States Lumber Co.,* 88 Ark. 36, the court said:

"Where the servant is engaged in ordinary labor with tools of simple construction, which are used by himself alone, and where the facts are undisputed, reasonable minds must inevitably come to the same conclusion, hence, there is nothing to submit to the jury."

See also *St. Louis, I. M. & S. Ry. Co.* v. *Goins,* 90 Ark. 392; *Henry Wrape Co.* v. *Huddleston,* 66 Ark. 238; *Fullerton* v. *Henry Wrape Co.,* 151 S. W. 1005.

It may be that if appellee had adopted a different method of unchoking the chute with the stick used, that no injury would have occurred in any event. If, instead of bearing down with his whole weight upon the stick to push it through, he had worked in unchoking it by prizing and lifting the obstruction therein from the side or end of the chute, he might have accomplished the purpose as well, and if the stick had broken, there would have been no throwing him forward nor upon the saws. The method of doing the work was entirely under his own control, as well as the selection of a stick from those furnished with which to do it.

In *Chicago, R. I. & P. Ry. Co.* v. *Smith,* 107 Ark. 512, we said: "There is no hard and fast rule that may be laid down as governing the liability of an employer for defects in common tools. In view of this condition, we do not undertake to say what state of facts the rule of liability should embrace, and what it should not."

In that case, the servant was not permitted to make his own selection of the tool to be used by himself alone.

It follows, from the principles announced that no negligence was shown upon the part of the master, and that the injury occurred from an ordinary risk incident to the employment, which was assumed by appellee, upon engaging therein.

The court erred in not directing a verdict for appellant, and its judgment is reversed and the cause dismissed.