CLEAVER *v.* BERT JOHNSON ORCHARDS, INC.

Opinion delivered October 31, 1927.

1. APPEAL AND ERROR—REVIEW OF DIRECTED VERDICT.—In determining on appeal the correctness of the trial court's action in directing a verdict, the evidence should be viewed in the light most favorable to the party against whom the verdict was directed, and, if there was any evidence tending to establish an issue in favor of the party against whom the verdict was directed, it was error to take the case from the jury.

2. MASTER AND SERVANT—NEGLIGENCE—BURDEN OF PROOF.—In an action by a farm hand, employed in a peach orchard, to recover damage for injury to his eye, alleged to have been caused by the negligence of the master in furnishing an improperly tempered hoe, burden of proof was on the servant to show negligence by the master in failing to perform some duty owed to him, which proximately caused or resulted in his injury.

3. MASTER AND SERVANT—CARE IN FURNISHING TOOLS.—A master is not an insurer of a servant's safety, and is only bound to use ordinary care proportionate to the danger to be incurred in furnishing proper tools to the servant for performance of his duty.

4. MASTER AND SERVANT—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—In an action by a farm hand employed in a peach orchard to recover damages for injury to his eye, alleged to have been caused by negligence of the master in furnishing an improperly tempered hoe, evidence which failed to show that the hoe selected by the plaintiff was defective or that the injury resulted from steel breaking off the hoe, and showing affirmatively that the master furnished skilled and experienced blacksmiths for sharpening hoes, was not legally sufficient to show negligence by the master in failing to exercise ordinary care to furnish safe tools to its servant for performance of his duty.

Appeal from Pike Circuit Court; *J. S. Lake,* Special Judge; affirmed.

STATEMENT BY THE COURT.

Appellant brought this suit to recover damages for an injury to his eye, destroying the sight of it, alleged to have been caused by the negligence of the defendant in furnishing him with a defective tool with which to work.

The complaint alleges: "* * * that said negligence of appellee consisted in appellee's negligently furnishing appellant with which to do said work a hoe that was improperly tempered, making it too hard and brittle, so that, when said hoe struck a rock while appellant was using it in said work, a piece of metal broke from said hoe, by reason of said improper tempering, and struck appellant in the eye and injured him; that said condition of said hoe was known to appellee, or by the exercise of ordinary care could have been known to it, before the occurrence of said injury * * *."

Defendant denied any negligence, denied having directed the appellant to select any particular hoe or having selected one for him, and that it knew of any defective condition of the hoe, or failed to exercise ordinary care to discover any such defect; denied that the injury occurred from a piece of steel splintering off the hoe and striking plaintiff in the eye, as alleged, and all other allegations of the complaint.

It appears from the testimony that appellant was working in the Bert Johnson Orchards, the largest peach orchards in the world, the surface of which is undulating, and much of it contains gravel and rocks up to large bowlder size. That appellant, a farmer, had been working in the orchards from April 13 to June 16, 1926, the day of the injury. He had been cutting bushes with pruning shears until about 10:30 that morning, at which time he began hoeing or cutting the weeds from around the trees. He stated that the foreman told him to cut the weeds, and that there were two hoes newly sharpened lying on the ground inside appellee's blacksmith shop, and the foreman said, "Take one of those hoes there," and he did not observe any defect in the hoes, and picked up the one near-

est to him, which was about 4 inches wide and had a hole in the top for the handle. The hoe was known as a cane hoe, and it was about half worn out, and when new was about 7 inches long. It was freshly sharpened, and had not been used since being sharpened. The hoes were sharpened by blacksmiths employed by appellee. This was the regular place where hoes were sharpened on that work. Describing the injury, he said he was hoeing around the third peach tree, the ground was loose, freshly plowed, and had some gravel where he hoed the first two trees. There was a skip where there was no tree, and the third was down the hill, where it was rocky. While hoeing this third tree he struck a rock, and a piece of steel broke off the hoe and struck him in the right eye. "It produced a stinging, sickening sensation when it first struck me," and blinded the eye at once, and that he had never been able to see out of it since the injury. He went home, and in the afternoon to see a doctor at Nashville, who discovered something in the eye, but did not try to remove it. The next day, at Texarkana, Dr. Fuller removed the sliver from his eye with a magnet. The doctor held the magnet up and said, "There is the steel." Appellant was considerably blinded, and could not say positively he saw the steel, but saw the magnet and felt the object come out of his eye, when it was attracted and drawn by the magnet. He went home after several days, and had to return again to Texarkana for treatment by Dr. Fuller. Had suffered much pain from the injury and the loss of sight from the injured eye, from which he still suffered at the time of the trial, and his other eye had been weakened also by the injury; that he was not able to do more than about one-fourth of a farm hand's work since the injury. On cross-examination he stated he was 46 years old; could read a little with strong glasses; knew the make of hoe the company furnished its men; had used them some in 1920, but had not used such a hoe since until the day of the injury, but had used hoes of similar make and style. Made a casual examination of the hoe, when he picked it up, to see if it was sharp. It appeared to be all right.

The hoes were lying on the ground in the shop, and he was at the blacksmith shop every day, and knew where the hoes were kept. Was just finishing cutting the weeds around the third tree "when the hoe struck a rock, and a piece slivered off and struck me in the eye." He did not examine the hoe to see whether it was gapped, and carried it to the turn-row or street, put it down on the ground, and had never seen it since.

Harold Stewart, an 11-year-old boy, hoeing peach trees on the opposite row, about 15 feet from the appellant, stated that he saw appellant when he got hurt; that he staggered when he was struck, and came up, had his hand over his eye, and asked if he could see anything in his eye. Witness saw something about the center of the eye-ball, but could not tell whether it was a piece of steel or rock. He appeared to be suffering, and he went with him to Kimball's house. Said appellant was using an old grubbing hoe that appeared to have been sharpened that morning. Said on cross-examination that he had been hoeing along there all morning with appellant; that it was a sort of a rocky place; that witness had hoed about 25 or 30 trees with a hoe Pollock had brought out and used awhile, and appellant had been hoeing about the same length of time, with a hoe like witness was using; they worked just alike, and witness' hoe came from the shop. Did not know what became of the hoe appellant was using; worked out there after appellant got hurt, and left his hoe out there. Appellant carried his hoe up to the road. Witness also stated there was a number of old plow points and things like that around the trees, where they had been changed, but he did not see any around the tree where appellant got hurt, but did not look for any. There were rocks there.

George Boggs testified that he was a blacksmith; had been a blacksmith about 54 years, 30 of which had been in Arkansas, and had worked 17 months as a smith near appellee's orchards, and had sharpened hoes in their orchards. That a blacksmith, in sharpening a hoe to be used in rocky ground, should temper it so that it would be

tough enough not to break or sliver when used in the rocks. ''If the blacksmith will use proper skill he can so sharpen the hoe and so temper it in sharpening it that it will not chip in using it in the rocks.'' That the natural result of tempering a hoe too highly is to make it brittle and liable to chip or break. That the ordinary farmer, not skilled as a blacksmith, could not tell by looking at a hoe whether or not it was too highly tempered. Witness did not claim to be a perfect blacksmith. Admitted that he made mistakes, but that it was very rare that he made a mistake in tempering a piece of steel. Said the user of the hoe can tell as soon as he commences to work with it, whether it is properly tempered and sharpened.

J. R. Sevier stated that he had been a blacksmith 40 years, and had sharpened hoes ever since he began the business. That if a hoe was properly tempered it would not chip or sliver. Stated how the tempering was done, and the changing color of the metal after heating until the completion of the tempering. That one without experience as a blacksmith could not tell about the temper of the hoe by looking at it.

Several doctors testified about the injury to the eye and the result of it. One of them stated that an operation had been performed on the eye for a cataract, would say a traumatic cataract. Usual cause of cataract is old age.

Carl Prior testified that he was foreman on division 1 of Bert Johnson Orchards; that he had given appellant directions to hoe the young trees that day, about 15 minutes before 7 that morning. The instructions were given before the blacksmith shop, which was maintained in connection with division 1 of the orchard; that each division of the orchard has a shop. Hoes are kept in the blacksmith shop, and he supposed appellant got a hoe from the rack. Appellant told him in the evening that he had hurt his eye in the morning and had gone to the doctor. Did not know what hoe appellant was using. ''After he quit work witness found two hoes on the road near where they were working. Mr. Pollock and Mr. Cleaver were working down there. The Stewart boy was working

close.     *   *   *     Found two hoes beside the road near
where Cleaver had been working. Examined the hoes.
Did not find any defective condition in them. Picked the
hoe up and looked for a break. Had heard the man had
been hurt, and wanted to see whether or not the hoe he
was using was broken, whether it was a defective hoe.
Does not know whether either one of the two hoes was the
hoe appellant was using. It was supposed to be.   *   *   *
Found no break or sliver broken off.'' Did not know
whether he examined the hoes closely enough to detect
a small gap in the edge that might have been made by a
bit of steel breaking off. Practically all the country is
rocky, and it was rocky where appellant was sent to work.
The hoes had to be sharpened once a day. The company
kept a blacksmith to sharpen the hoes, and the workmen
bring in the dull hoes to the blacksmith shop and get
sharp ones.

L. W. Huddleston was the blacksmith at the orchard
on the 16th of June, 1926, the day appellant was hurt, and
had a helper named Ray. He and the helper sharpened
the hoes of appellee. It is necessary to sharpen the hoes
frequently; sometimes they would be standing in the cor-
ner, and, after they were sharpened, they might be
thrown down on the ground and left there over night.
The blacksmith hardly ever puts the handles back in the
hoes; the men who get the hoes do that, and they select
their own hoes. Does not remember the date, but heard
of the injury of appellant, and witness and Ray were
sharpening the hoes at that time. Does not know
whether or not Ray sharpened the hoe used by appellant,
but they were the only blacksmiths at this division shop,
and the blacksmiths sharpened all the hoes. That he had
been blacksmithing for appellee 13 years. That the hoes
used in the orchards at the time were called cane hoes,
and, when new, were about 4 inches wide and 7 inches
long, and the body is about one-fourth of an inch thick.
They have a broader blade than the old-fashioned grub-
bing hoe, and thicker. Described the method of sharpen-
ing and tempering them by holding them in water. Sel-

dom tempers one too hard, and, if it is too hard, he reheats and tempers it again. Always sees that a hoe is properly tempered by watching the temper come. If the hoe is tempered too soft, the rocks will cause it to bend, and if too hard, will break off at the water-line. The entire bit of the hoe will break off, when used in the rocks; instead of chipping it will break off at the water-line. Being too highly tempered he thinks will not cause it to chip or gap. That, if they did not chip or gap upon striking the rocks, they would not need to be sharpened but once, and very few hoes will hold all day among the rocks. The men change hoes twice a day. Stated his helper knew how to sharpen hoes and give them the right temper.

Graves testified he had been a blacksmith for 38 years, and had been operating the appellee's shop on division 2 for 10 years. Stated the method of sharpening hoes and tempering them, as had been stated by the others.

Ray testified that he had been a blacksmith 7 years, and was working in the appellee's orchard with L. W. Huddleston in the shop in division 1, on the day appellant was injured. Sharpened some hoes for the orchard. Told how he sharpened the hoes and the manner of tempering them, judging whether the hoe was properly tempered by the color of the metal, and, if too highly tempered, he retempers it. Always makes an honest effort to see that the hoes are properly tempered. Was Mr. Huddleston's helper in the blacksmith shop on division 1.

After the testimony was all introduced, the court directed the jury to return a verdict for the defendant, which was done, and from the judgment thereon this appeal is prosecuted.

*Frank Pace, Tom Kidd* and *Tom W. Campbell,* for appellant.

*J. C. Pinnix, T. D. Wynne* and *Chas. A. Miller,* for appellee.

KIRBY, J.    The only question for determination is whether the court erred in taking the case from the jury and directing the verdict for appellee.

The settled rule for its determination is:

"In determining on appeal the correctness of the trial court's action in directing a verdict, the rule is to take that view of the evidence that is most favorable to the party against whom the verdict is directed, and, where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury." *Cruce* v. *Mo. Pac. Rd. Co.,* 167 Ark. 88, 266 S. W. 981; *Crawford* v. *Sawyer & Austin Lbr. Co.,* 91 Ark. 337, 121 S. W. 286; *Williams* v. *St. L. & S. F. R. R. Co.,* 103 Ark. 401, 147 S. W. 93; *Farmers' Bank* v. *Johnson,* 105 Ark. 136, 150 S. W. 401; *Jones* v. *Lewis,* 89 Ark. 368, 117 S. W. 561.

The evidence does not certainly show that appellant's injury was caused by a piece of steel broken from the hoe which he was using in cutting weeds, upon striking a rock, although the statement that it was withdrawn from his eye by a magnet indicates that it was a piece of metal.    No witness examined the hoe after the injury occurred, unless it was one of two hoes inspected by appellee's foreman, picked up out at the road, in the orchard near where appellant and the Stewart boy were working, and where appellant said he had laid his hoe down. Neither of these hoes was defective or gapped, however.

It is also true that the cane or grubbing hoe was a simple tool, not complex of construction nor difficult of operation, and that appellant was a farmer accustomed for years to the use of such tools.    The court has held that, in the selection and use of simple tools, whose defects are patent and obvious and as discoverable to the servant as to the master, the servant assumes the risk of the ordinary use thereof.    *Fordyce Lbr. Co.* v. *Lynn,* 108 Ark. 377, 158 S. W. 501, 47 L. R. A. (N. S.) 270; *Arnold* v. *Doniphan Lbr. Co.,* 130 Ark. 486, 198 S. W. 117.

The burden of proof was upon the injured servant to show negligence on the part of the master in the failure to

perform some duty owed to him, as such servant, which proximately caused or resulted in his injury. Here the servant, according to his own statement, made selection of the tool or implement which he was to use, a grubbing hoe, for cutting weeds in rocky soil, with the ordinary use of which the servant had been familiar always, and there is no testimony tending to show that the tool selected was defective, nor certainly that the injury resulted from a piece of steel slivering and breaking off from the edge of the hoe, upon its being struck against a rock, in its ordinary use. No witnesses stated that the hoe was gapped or the blade slivered, and the foreman testified that neither of the two hoes left in the road, near where appellant passed and left his hoe, was gapped or showed that a sliver had broken off from the edge of the blade.

It may be that neither of these hoes examined by him was the one which appellant was using when he was injured. The master, in any event, is not an insurer of his servant's safety, and was only bound to the use of ordinary care proportionate to the danger to be incurred in furnishing proper tools to the servant for the performance of his duty, and his negligence is charged to consist in furnishing a defective hoe, too highly tempered in the sharpening, with which to do the work. Although the simple tool doctrine has never been established in this jurisdiction, there was said about it, in *Arnold* v. *Doniphan Lbr. Co., supra*: "The master does not owe the servant the duty of inspecting tools given to the latter with which to work, where the tool furnished is one which requires no special skill or training for its safe use, and when the defect in the tool, if any, is as obvious to the servant as it is to the master, or when the defect arises from the use of the tool, and the servant would naturally be the first person to discover the existence of the defect."

The undisputed testimony shows that the appellee furnished only skilled and experienced blacksmiths for the sharpening of these hoes, that were dulled twice a day

in their ordinary use in the rocky ground of the orchard. Some of the smiths have been at work for as much as 30 years, and all of them are skilled in sharpening and tempering such tools. That the one having the least experience in such work, Ray, a blacksmith for 7 years, the helper of Huddleston, the blacksmith in charge of the shop at division 1, who had been working for appellee for 13 years, knew how to sharpen and temper hoes properly. That he always made an honest effort to see that the hoes were properly tempered, and that, if he discovered one too highly tempered, he retempered it. Neither does the testimony show that Ray had sharpened the hoe that was being used by the appellant at the time the injury occurred, nor was there any testimony tending to show that any of the hoes sharpened in the blacksmith shop of division 1, nor any of the other shops, had ever before been complained of as having been improperly sharpened and made defective from being too highly tempered.

Assuming that the injury occurred as stated by appellant, the testimony is not legally sufficient to show negligence on the part of appellee in the failure to exercise ordinary care to furnish reasonably safe tools to its employee for the performance of his duty, and, it being necessary for him to show such negligence in order to recover, the court did not err in directing the verdict against him.

The judgment is accordingly affirmed.