SIMMS OIL COMPANY *v.* SEAGO.

4-3149

Opinion delivered October 23, 1933.

1090

*McKay & McKay,* for appellant.

*McNalley & Sellers* and *Jones & Jones,* for appellee.

BUTLER, J. This appeal is from a verdict and judgment in favor of the appellee for the sum of $10,000 for personal injuries sustained by him while in the employ of the appellant company. The sole ground on which the contention of the appellant for reversal is based is that the appellee, on account of the nature of the work in which he was engaged and the character of injury received, assumed as a matter of law the risk at the time and place that the injury occurred.

On the 13th day of June, 1929, the date the appellee received the injury, he was in the employ of the appellant company as a pumper. The oil wells were operated by means of a pumping unit, the motive power being furnished by a gasoline engine. There were eight wells under the care of the appellee, whose duty it was to visit each one during the time he was on duty and to keep the machinery in operation, and for this purpose could start and stop the machinery, keep it oiled, keep the bolts tight and the floor around the machinery clean. At Murphy well No. 4, the one at which the accident occurred, the appellee had noticed that for several days the oil had been escaping from some part of the machinery and flowing out on the platform around the unit. He called this to the attention of his superiors from day to day but repair was not made until the forenoon of the 23d. Passing this well

at some time of the day, he discovered that the oil had ceased to flow over the platform, that the machinery had been repaired, and that the platform was covered with a layer of sand which had been placed there to absorb the oil that was on the platform. In the regular course of inspection on that afternoon he reached Murphy well No. 4, bringing with him his tools to remove the sand he had before discovered upon it. He laid these tools down nearby, and, going around the unit for the purpose of inspection, he discovered that it was in good operation, needed no oil, and the only defect he observed was a loose bolt on the platform, but he had no wrench with him to tighten the same. He stepped upon the platform in order to pass over to get his tools, and stepped upon a bolt hidden under the sand which turned and slipped, causing him to fall under a part of the machinery, resulting in his injury.

It was in evidence that this bolt had been thrown upon the platform and covered with sand by an employee of the company, one of a gang of four employees who were called roustabouts, who were sent from place to place to do such particular work as they might be directed to do without having any regular job or character of work to perform. This employee testified that he had been told by his superior about 11 o'clock to go to Murphy well No. 4 and clean up the rig; that it was his duty, if he found anything in a broken condition needing only a minor repair, to make such. When he reached the well, he found that a bolt was broken in a part of the machinery called the pitman. He removed this broken bolt and replaced it with a new one, throwing the broken bolt upon the platform. This was covered with oil, and he scattered sand over it to absorb the oil. No one had given him any particular directions to do this, but that was a part of his duty, and he was supposed to do it. It was his intention to scrape the floor before he left. He first began under the derrick and cleaned that, and it would have taken him about five minutes to finish the job by scraping the floor around the pumping unit when the whistle blew for dinner, and he quit, intending to return after dinner and complete the job. After dinner, however, he was sent to another job and did not return.

The appellant insists that, since it was one of appellee's duties to clean the floor around the pumping unit for his own protection as well as others whose duties might require their presence on the floor, he must be held to have assumed the risk of his injury, as he was there for the purpose of performing the duty that he had contracted to do; that therefore, for any risk or injury resulting, the master would not be liable, under the rule announced in the case of *Moline Timber Co.* v. *McClure,* 166 Ark. 364, 266 S. W. 301, and numerous cases following. In the case of *Timber Co.* v. *McClure, supra,* this court said: "Learned counsel for defendant invoke the rule, established by decisions of this court and by other authorities, that, where the conditions under which a servant is put to work are constantly changing so as to increase or diminish his safety, it is the servant's duty to make the working place safe and that no duty in that regard rests upon the master. That rule is well established by decisions of this court. *Grayson-McLeod Lbr. Co.* v. *Carter,* 76 Ark. 69, 88 S. W. 597; *Murch Bros. Const. Co.* v. *Hays,* 88 Ark. 292, 114 S. W. 697; *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140, 124 S. W. 1048; *Fordyce Lbr. Co.* v. *Lynn,* 108 Ark. 377, 158 S. W. 501; *Sheldon Handle Co.* v. *Williams,* 122 Ark. 552, 184 S. W. 43. That doctrine is an exception to the general rule that the master owes his servant the duty to exercise ordinary care to make the working place and appliances with which to work reasonably safe. Of course, where the duty is delegated to the servant himself to make his own working place and appliances safe, or to determine the sufficiency of the appliances, there is no duty on the part of the master, and the servant assumes the risk of any danger arising from the use of the working place and the appliances and material."

We are of the opinion that the facts of this case do not bring it within the rule of the case just cited. The dangers ordinarily incident to the use of the platform would be occasioned by the oil that might get upon it causing it to be slippery, and the purpose of cleaning it would be to obviate this danger. There is evidence that this duty was only one of several he had to perform,

and that there were other employees whose duty it was also on occasion to clean up around the wells. The rule is so well settled as to make the citation of authorities unnecessary, that the servant assumes only those risks which are ordinarily incident to his employment, and he does not ordinarily assume risks created by the negligent acts of the master, acting through a fellow-servant. There is testimony that a fellow-servant, acting within the line of his duty, negligently left the broken bolt upon the platform and covered it with sand so as not to make it discoverable by the appellee from an ordinary inspection, and thus created a risk which would not ordinarily exist, and which would not usually be incident to the nature of the employment in which the appellee was engaged.

This is not a case where it can be said as a matter of law that the risk was assumed by the servant, and, as the instructions are not copied into the record, but are conceded to be correct, we must assume that the jury, upon proper declarations of law, passed on this question.

It is argued that appellee's present plight was not caused by the injury resulting from the fall when he stepped on the bolt, but that it is the result of a disease originating from some other and independent cause, and a suggestion is made that it might have been from a different injury than that complained of. The testimony of appellant's witnesses, especially the physicians, supports appellant's contention; these testified that there was a diseased condition of a part of the backbone, which caused his disability, but that this was not occasioned by any antecedent injury but by the attack of some kind of germ on that part of his organism. However, there was other testimony that, before the date of the alleged injury, appellee was a healthy man, able to and did work regularly, and that after that he was unable to work for several days, complained of great pain and was treated by several physicians. He went back to work, but there is evidence he was never able to work with the same degree of efficiency as before, and complained of pain during this time, and when he strained his back he never was able to go back to work again. The injury claimed to have been received and appellee's previous physical condition was

related to physicians who were familiar with his then condition, and these testified that in their opinion the injury detailed to them was the cause of his present disability. This raised a question of fact, upon which the jury's verdict is conclusive.

It is insisted, however, that in any view of the evidence, the damage awarded by the jury is excessive. We have seen that his present condition, in view of the verdict of the jury, must be attributed to the injury arising on June 23d. Regarding that condition, there is but little dispute. He suffers much pain and will continue to do so. He has been rendered totally unfit to perform any work requiring physical exertion, and this condition is permanent. Just before the injury he was a healthy, industrious man, thirty-nine years old, a common laborer, working seven days in the week at a daily wage of $5.50. In view of his age, loss of earning power and pain endured and reasonably to be expected in the future, we are unable to say that the verdict of the jury assessing the damage was the result of passion or prejudice, but rather that it had substantial evidence to support it.

Let the judgment be affirmed.