## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* PETTY.

### Opinion delivered October 17, 1896.

EMINENT DOMAIN—AUTHORITY OF RAILROAD TO BUILD BRANCH—Where the board of directors of a railroad company resolved to build a branch line between designated points, and also to build a second branch line to connect with the first, and that the president of the company was authorized to put under construction and make the necessary contracts for such portions of the foregoing roads as his judgment might approve, the president is authorized to construct the latter branch before the former, if he deems best, so as to authorize condemnation proceedings for that purpose.

TRIAL—DIRECTING VERDICT.—Where there is any evidence tending to establish an issue, it is error to take the case from the jury.

Appeal from Sebastian Circuit Court, Greenwood District.

F. A. YOUMANS, Special Judge.

#### STATEMENT BY THE COURT.

This is an action by the St. Louis, Iron Mountain & Southern Railway Company against Enoch V. Petty, to condemn land for the purpose of constructing a side track.

The company filed its petition for condemnation, alleging, amongst other things, that, by virtue of a consolidation with the Cairo and Fulton Railroad Company, it became vested with all the rights and powers given to said Cairo and Fulton Railroad Company in its

charter; that it became vested with the right to build branches from its main line to any point in the state, and with the power to exercise the right of eminent domain in building such branches.    It alleges that the side track for which it asks to condemn land is located on a line which is known as the Fort Smith branch of the St. Louis, Iron Mountain & Southern Railway, and when completed will extend from Gurdon on its main line to the city of Fort Smith; that the board of direct- ors of said company had duly authorized the con- struction of said Fort Smith branch and the line thereof surveyed and located; that the construction of the line had, for the purpose of convenience, been commenced at Fort Smith, and that the intention of the company was to speedily push the line to completion; that, after a portion of the line had been completed, the construction of the same was temporarily suspended on account of financial difficulties, but that the intention of the com- pany was in good faith to push said line to completion so soon as it was possible to do so.

The appellee, Petty, answered, denying the consoli- dation as alleged, and denying the right of the company to condemn his land in this proceeding.    On the trial the appellant read in evidence a resolution of its board of directors, passed in 1887, which, among other matters, resolved that the company "proceed immediately to build, maintain, own, and operate, with all the neces- sary equipment, franchises and properties appertaining thereto, a railroad beginning at or near Beebe in White county, running thence through the counties of Lonoke, Faulkner, Perry, Yell, Logan, Scott and Sebastian to Fort Smith,    *   *   *   *   *   *   *   *   *    also a branch from the main line of the Iron Mountain road at some point to be hereafter determined, in Clark or Nevada counties, Arkansas, running thence north through the counties of Pike, Montgomery, Hot Springs, Garland,

Polk, Scott, and Sebastian to a connection with the branch above described at or near the boundary line between the counties of Sebastian and Scott.   *   *   * Resolved, further, that the president is authorized to put under construction and make the necessary contracts for such portions of the foregoing roads as his judgment may approve."

Another resolution by said board in reference to the same matter, passed in 1893, was also read.

The special judge presiding at the trial was of the opinion that the appellant company had power to construct branch lines, and to condemn land for the purposes of such construction, but he held that at the commencement of this action there was no resolution of the board of directors of the appellant company authorizing the construction of a branch line from Gurdon to Fort Smith, and no authority to bring this suit.   He therefore directed a verdict for the defendant.   From the judgment rendered in favor of defendant, the company appealed.

*Dodge & Johnson*, for appellant.

1.   The court erred in excluding all the testimony introduced before the jury.   Defendant, taking his cue from the *dictum* in 57 Ark. 359, 363, based his defense on the sole ground that appellant had no legal existence, and therefore no warrant to construct a branch.   But the courts of this state take judicial notice of the act of January 12, 1853, incorporating the Cairo & Fulton railroad.   30 Ark. 701.   Also of the act consolidating the C. & F. Railroad and the St. L.,I. M. & S. Railway Company under sec. 10 of said act.   The validity of this consolidation has often been recognized by this court. 30 Ark. 693; *ib.* 674; 41 *id.* 516; 113 U. S. 474; 112 *id.* 129; 98 *id*, 563; Acts 1868, sec. 43 p. 311; Acts 1887, p. 25; 6 Dec. U. S. Land Off. 356; 7 *id.* 204.

2. By virtue of this consolidation, appellant acquired all the property, rights, privileges, etc., belonging to each of the constituent companies. 30 Ark. 680; 6 Gill. 288; 15 Wall. 460; 41 Ark. 509; 113 U. S. 465. Appellant succeeded to the right to build branches "to any point or points in the state." The resolution, therefore, of the board of directors authorizing the construction of this branch should have been admitted.

3. The suit was not prematurely brought. All errors or omissions in the original resolution were overcome by the modification made Sept. 12, 1889, which was filed in the secretary of state's office four years before this suit was brought.

4. It was error to direct a verdict for defendant.

*Winchester & Martin*, for appellee.

1. The court below held that the consolidation of the two roads was properly effected, but that appellant had failed to comply with the requirements of the statute as to the extension or construction of railroads, and hence directed a verdict for appellee. It was essential for the board of directors to put the right to exercise the right of eminent domain into force by some authoritative announcement. The resolution of March 14, 1887, only authorized the branch from Beebe to Fort Smith, and no change was made in this intention until December, 1889, which was *more than a year after this suit was brought.*

2. To *change* a location, certain things are necessary. Mansf. Dig. secs. 5443-4. The statutes granting these privileges are strictly construed. Lewis, Em. Dom. secs. 253-4, 392; 57 Ark. 359; Pierce, Railroads, p. 170; 82 Pa. St. 382; 78 N. Y. 362.

3. The suit was prematurely brought.

7

Authority
of railroad
to build
branch
line.

RIDDICK, J., (after stating the facts.) There is only one question presented for our consideration in this case: Did the resolution of the board of directors of the appellant company, read in evidence and passed by said board in 1887, authorize the construction of the branch line of railroad for which the land of Petty is asked to be condemned? The learned special judge held that it did not, and that there was no authority to bring this suit until given by the subsequent resolution of said board of directors, passed in 1890, after the commencement of this action. The question relates to the intention of the board in passing the resolution of 1887, and to the power conferred by its passage. After consideration of the same, we are of the opinion that this resolution, so far as the board of directors were enabled to do so, empowered the president of the appellant company to construct branch lines of railway connecting the city of Fort Smith with the main line of appellant's railway at Beebe and also with the main line at a point in either Clark or Nevada counties. The objection that the resolution only authorized the construction of a branch line from Fort Smith to Beebe, and that the line from a point in Clark or Nevada county was intended only as a connection with this branch from Beebe to Fort Smith and not to be built until after the construction of said last named branch seems to us hypercritical. It sufficiently appears from the resolution that the board of directors intended to authorize the construction of two branch lines of railway, one leaving the main line at Beebe and the other at a point in Clark or Nevada county; these two branch lines to converge at a point on or near the line between Scott and Sebastian counties from which point a single line to Fort Smith was authorized. It seems to us of no moment, under this resolution, whether the branch from Beebe to Fort Smith was first built, and then a connection made with the point in Clark or

Nevada county by a line diverging from the above named branch, or whether the branch connecting Fort Smith with the main line at a point in Clark or Nevada county was first constructed, and afterwards a connection made with Beebe. In either case the result is the same. The board of directors seems to have been of this opinion, for the resolution authorized the president to put under construction such portion of the lines named therein "as his judgment may approve," thus expressly authorizing him, as we think, to first construct the branch line from Fort Smith to the point in Clark or Nevada county. Nor does it seem material that no particular point in either Clark or Nevada county was designated by the resolution. It is sufficient that the resolution authorized the construction of a branch line to Fort Smith, and that under this authority the line had been surveyed and established and partly constructed through Sebastian county, where the land sought to be condemned is situated.

When this case was here on a former appeal, Chief Justice Cockrill, referring to the fact that the construction of this branch line had been commenced at a point in the state remote from the main line, said that the power to take property *in invitum* for the purpose of such construction "could not have been exercised except upon a clear showing of a *bona fide* intent to push the enterprise through presently to the trunk connection which alone authorized its construction." *Railway Company* v. *Petty*, 57 Ark. 359. Upon the question whether the evidence was sufficient to show that the appellant company honestly intended, so soon as practicable, to push the construction to a connection with its main line, as authorized by the resolution of the board of directors, we do not express an opinion. It is sufficient to say that there was some evidence tending to show that such was the intention of the company, and the question should

When error to direct a verdict.

have been submitted to the jury. It was therefore improper to direct a verdict for the defendant. The judgment must be reversed, and the cause remanded for a new trial, and it is so ordered.