CRAWFORD *v.* SAWYER & AUSTIN LUMBER COMPANY.

Opinion delivered July 12, 1909.

1.  TRIAL—DIRECTING VERDICT.—In determining whether the trial court properly directed a verdict for the defendant, the question on appeal is, was the evidence adduced by the plaintiff legally sufficient to support a verdict in his favor? and in deciding this question the testimony in his favor will be given its strongest probative force, and that view of it most favorable to him will be accepted. (Page 340.)

2.  SAME—WHEN ERROR TO DIRECT VERDICT.—It was error, in an action by a servant against his master to recover for personal injuries sustained by him, to direct a verdict for the defendant if there was evidence

tending to prove that the master was negligent (a) either in failing to provide for the plaintiff's safety or (b) by reason of the negligence of a servant who was not a fellow servant of plaintiff. (Page 342.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; reversed.

*W. F. Coleman* and *Murphy, Coleman & Lewis,* for appellant.

1. Under the doctrine laid down in the Triplett case, 54 Ark. 289, since followed and approved by this court in many cases, and the definition of fellow servants in the Snellen case, 82 Ark. 337, to be "persons employed by the same master to accomplish one common object, and so related in their labor performed in the service of the master as ordinarily to be exposed to injuries caused by each other's negligence," it is clear that appellant was not a fellow servant with the fireman, and the injury was not "within the risk ordinarily incident to the service undertaken." There was a question, therefore, for the jury's determination. 58 Ark. 198.

2. But, if they were fellow servants, there is still a case of concurring negligence by the master and a fellow servant for which the master would be liable. *Chicago Mill & Lumber Co.* v. *Cooper,* 90 Ark. 326; 4 Thompson on Negligence § 813; 1 Labatt on M. & S. § 813; 106 U. S. 700; 203 U. S. 473; 21 S. E. (Va.) 347; 95 N. Y. 552; 67 Ark. 1; 88 Ark. 28.

*Austin & Danaher,* for appellee.

1. The burden was on plaintiff to show some negligence on the part of the defendant which caused or contributed to his injury. Such negligence cannot be surmised or presumed. 82 Ark. 372. The plaintiff and the fireman were fellow servants, and the "injury was within the risk ordinarily incident to the service undertaken." 54 Ark. 296; 85 Ill. 500; 46 L. R. A. 377; 19 Am. St. Rep. 617; 55 L. R. A. 908; 58 Am. Rep. 881; 31 L. R. A. 321.

2. His own contributory negligence in going upon the track where he was hurt, a safer way having been provided which he could have traveled, as is conclusively shown in the evidence, will preclude a recovery. 36 Ark. 377; 49 Ark. 257.

BATTLE, J. Thos. D. Crawford brought this action against Sawyer & Austin Lumber Company to recover damages for per-

sonal injuries sustained by him as a result of the negligence of the defendant. The substance of the contents of his complaint is correctly stated in the abstract of appellant as follows:

"The defendant is a corporation, owning and operating a saw mill plant at Pine Bluff, Arkansas. West of its principal saw mill, and separated from it by a large mill pond, the defendant operates a sash and door factory. Extending from the sash and door factory, and running in an easterly direction and curving around the northern boundary of the mill pond, was one of the railroad tracks of the Pine Bluff & Western Railway Company. This track passed in close proximity to the principal saw mill and also near the machine shop, the track passing just north of both. This track was generally used by the employees of the company in going from the sash and door factory to the principal saw mill, the machine shop and the office of the company. Plaintiff was the superintendent of the sash and door factory, and was earning a salary of $2,000 per year. On the morning of the 23d of October, 1905, he started from the door factory to the machine shop, and proceeded over the track mentioned. When opposite the saw mill, defendant negligently opened a valve to blow out the boilers, which so enveloped the plaintiff in steam and vapor as to prevent him from seeing in any direction, thereby confusing him and blinding him as to his surroundings and preventing him from getting off the track with safety, as the track at this point was on a high embankment with a ditch on both sides. The blowpipe was negligently constructed in that it directed the steam immediately across the track. While plaintiff was trying to get out of the steam, he was negligently struck by a flat car propelled by the defendant's engine, and knocked down upon the track, the wheels of the car so bruising and mutilating his left foot as to cause the loss of all of his toes on that foot and to render him a cripple for life. By reason of the enormous quantity of steam and vapor enveloping the plaintiff, he was prevented from seeing the train, and the operators of the train were prevented from seeing him. The damages were laid at the sum of $15,000."

Defendant answered and denied material allegations of the complaint, and alleged that plaintiff was guilty of contributory negligence.

After hearing all the evidence adduced by the parties, the court instructed the jury to return a verdict in favor of the defendant, which they did, and plaintiff appealed.

The only question for us to decide is, was the evidence adduced by the plaintiff legally sufficient to support a verdict in his favor? In deciding this question we should give the testimony in his favor its strongest probative force, and accept that view of it most favorable to him. *Catlett* v. *Railway Co.,* 57 Ark. 461; *Rodgers* v. *Choctaw, Oklahoma & Gulf Railroad Co.,* 76 Ark. 520; *Wallis* v. *St. Louis, Iron Mountain & Southern Railway Co.,* 77 Ark. 556; *Scott* v. *St. Louis, Iron Mountain & Southern Railway Co.,* 79 Ark. 137; *Evans* v. *St. Louis, Iron Mountain & Southern Railway Co.,* 87 Ark. 628.

Pursuing this course, we find the facts in this case as follows:

"The Sawyer & Austin Lumber Company operates a large saw mill plant near the city of Pine Bluff. Some distance west of this plant and separated from it by a mill pond was a sash and door factory belonging to the same company, but operated as an entirely distinct and separate business, except as hereinafter stated. The employees of the door factory had nothing in common with the employees of the saw mill, and, so far as the record shows, the respective service of the two sets of employees never brought them in any kind of personal contact or relationship. The saw mill was in charge of one superintendent, and the door factory was in charge of another, and, while both superintendents were under a common master, there was no co-service between them, and neither had anything whatever to do with the employees under the other.

"According to the testimony of the defendant, the company had established a roadway and walk from the door factory around the southern end of the pond to the company's office, which was located east of the saw mill. As a matter of fact, a railroad track extended from the office and curved partially around the saw mill plant and the north end of the pond. It was known as the pond track. Various employees, especially those of the door factory, often used this track as a walkway, in going to and returning from their work and in going from the door factory to the office of the company, with the full knowledge

and acquiescence of the company. Plaintiff testified that he invariably used it two and sometimes three and four times a day, as the occasion demanded. The company operated its log trains on this track.

"The saw mill was run by steam, while the door factory was operated by electricity. The boiler and engine rooms of the saw mill were located north of the saw mill plant, and in close proximity to the railroad track. Electricity was generated in the engine room by the same power which ran the saw mill, and was conducted through wire cables to the door factory. Except for this connection between the two, the door factory was as separate from and independent of the saw mill as it would have been if located in another city or in a different part of Pine Bluff.

"A blow-off pipe extended from the boiler room to within five or six feet of the track, and pointed directly across the track. The location and direction of this pipe when blowing off menaced the safety of any one passing along the railroad track, for in blowing off the steam it went with great force directly across the track. To avoid danger, the superintendent of the saw mill, who had absolute power in the premises, contented himself by giving positive instructions and establishing a rule that the boilers were not to be blown off in the day time, unless it was imperative, and that they were never to be blown off until the man in charge of the boilers had first looked to see if any person was in a position to be injured. The superintendent himself testified to these instructions and to this rule, and the testimony of Henry Washington, the employee in charge of the boilers, was to the same effect. This testimony not only established the fact of the existence of a dangerous agency which threatened the safety of the employees, but it showed a knowledge and appreciation of the danger on the part of the company.

"The plaintiff was the superintendent of the door factory, and often used the railroad track in going from the factory to the company's office. In doing this he passed directly in front of the blow-off pipe. He testified, however, that he had never noticed the blow-off pipe, and did not know that it was there, and had never seen the steam blown off."

"On the fifth of October, 1905, about 8:30 o'clock in the morning, the plaintiff started from the door factory to the machine

shop and to the office, and went by way of the railroad track because it was a shorter route. As he passed the corner of shed No. 4, which was on the western shore of the mill pond, he noticed defendant's log train moving east on the scales track on the south side of the saw mill plant. This track extended in a northeasterly direction to a junction with the other track referred to, the connecting switch being near the company's office. The train was moving in the same general direction that the plaintiff was going, and, as it was the invariable custom to weigh the cars as they passed over the scales, the plaintiff reasonably supposed that it would be ten or fifteen minutes before the train could pass the switch and come back on the track on which he was walking, even if it was the intention of the train crew to bring it back on that track. As the plaintiff continued on his way, he lost sight of the train, which passed on the other side of the saw mill plant from him. When the plaintiff reached a point about opposite the blow-pipe, the valve was suddenly opened without any warning, and the plaintiff was immediately enveloped in steam and vapor. Henry Washington testified that he opened the valve without first looking to see if the way was safe, and that he violated the company's orders in doing so. It enveloped him so completely that he could not see in any direction. He was feeling around trying to get off the track, exercising the best care he could in his confusion, and making special effort to avoid stumbling and falling, because the track at this place was on an embankment six or seven feet high with a ditch on each side. While groping his way to the north side of the track, which was away from the steam and afforded the best avenue of escape, a puff of wind lifted the steam and he saw the end of a log car about two feet from him. He reached out his hand, and it struck the end of the log. He tried to catch hold of it, but missed, and grabbed the end that hung down. He threw his foot against the break beam, and when he lost his hold he fell with his back on the north rail. As his foot was pressed against the brake beam, the train pushed him a few feet along the rail, when he tried to throw himself off the rail on the north side of the track. In doing this his left foot was run over, and he was injured in such a way as to make him a cripple for life. If it had not been for the steam, plaintiff would have seen the train, for he was keeping

a lookout for it, and the train operatives would have seen the plaintiff, for they were looking down the track."

These facts presented at least two questions that should have been submitted to the jury. First. Was appellee guilty of negligence in failing to provide for the safety of appellant and thereby liable for his injury? Second. Were appellant and Henry Washington fellow servants—were they "so related in their labor performed in the service of the master as ordinarily to be exposed to injuries caused by each other's negligence? (*Snellen v. Kansas City Southern Railway Company*, 82 Ark. 334, 337.) They should have been submitted with appropriate instructions. The court erred in instructing the jury to return a verdict in favor of the defendant.

Reverse and remand for a new trial.