JOHNSON *v.* MANTOOTH.

Opinion delivered July 12, 1915.

APPEAL AND ERROR—NEW TRIAL—CONFLICTING EVIDENCE—PRACTICE ON
APPEAL.—The action of the trial court in granting a new trial on
the ground that the verdict is not supported by the evidence, is
not reviewable on appeal, where it appears that there is a sub-
stantial conflict in the testimony.

Appeal from Jackson Circuit Court; *R. E. Jeffery,*
Judge; affirmed.

STATEMENT BY THE COURT.

The appellee sued appellant in the Jackson Circuit
Court, alleging that she was the owner of a certain tract
of land in that county through inheritance from her
mother and deed from her sister; that appellant was in
the unlawful possession of the land, and she prayed for
recovery of possession and damages.

The appellant answered, admitting that appellee was
the owner of the land, but denied that he was in the un-
lawful possession, and set up that he was in possession
of the land under an oral contract with T. E. Mantooth,
the husband and agent of appellee, entered into on or
about the 1st of August, 1911, having previously rented
the same for that year by oral contract entered into with
appellee through her husband and agent, T. E. Mantooth;
that by the terms of the contract of rental for the year
1912, made, as alleged, between appellant and appellee,
through the husband and agent of appellee, appellee
agreed to furnish the appellant with teams, feed and such
tools as would be necessary to cultivate, gather and mar-
ket the crops, and to furnish half of the oil, wire and fer-
riage necessary to gather and market the crops and hay
grown on the land for the year 1912; that appellant was
to pay appellee's agent one-half of the proceeds of the
crops as rent for the land and for the use of the teams and
tools for the year 1912.

The appellant set up, by way of counterclaim, that he
was in possession of the land, making preparations to cul-
tivate the same under the terms of his contract, and that
on or about the first day of February, 1912, the appellee

evicted the appellant from the lands, by reason whereof he failed to raise the crops which he had contemplated (the kinds and value thereof being specified), all to his damage in the aggregate sum of $2,500, for which he asked judgment.

Appellee testified that Judge Stuckey was her agent for the rental of the lands in controversy for the year 1912, and that her husband (Thornton Mantooth) was not her agent. Thornton Mantooth, her husband, had rented the land from her mother for the years 1910 and 1911, and appellant subrented it from Thornton Mantooth and lived on and cultivated it for the year 1911. Witness claimed no interest in the land prior to her mother's death, which occurred May 22, 1911. Her husband tried to act as her agent, as she found out from deals he made with other parties, but he was not her agent. He had no authority to rent the land for the year 1912. In October, 1911, she rented the land for the year 1912 to Mantooth Brothers. Her husband was not present at that time, and had no interest in it whatever. She gave the appellant written notice to get out, but he refused to do so until after she brought this suit. She denied that she had any agreement with appellant to furnish him anything or to allow him to cultivate the farm for the year 1912.

On cross-examination she stated that she had another place which she got from her mother which she allowed her husband to rent out when it was agreeable to her to do so. He made contracts for the rental of this place, on which they lived, when it was agreeable with her, but he talked with her first. From the year 1912, her husband did as she said when he made a contract. Her husband rented to Cherry and Campbell other lands of hers for the year 1912. It was agreeable to her, and she furnished these parties for the years of 1912 and 1913. Her husband was not her agent for furnishing them; she did that herself. The appellant knew that she had rented the land in controversy to the Mantooth Brothers in two days after she rented it. He came to see her about it. He said he would stay there and stand a lawsuit. This was before the written notice was given him to vacate. She stated

that after her husband had rented the land in controversy to appellant, she heard about it; heard it in about two weeks after he had done so.

Other witnesses corroborated the appellee to the effect that she, in person, on or about the 28th of October, 1911, rented the land to the Mantooth Brothers for the year 1912. The witnesses stated that the Mantooth Brothers were brothers of Thornton Mantooth, the husband of appellee. They had talked with him a little about renting the land, as people would talk about such things. One of the witnesses stated that Thornton Mantooth had told him time and again that he had promised Johnson the place; did not tell the particulars about his trade. Another one stated that Thornton told him that he had rented the land to Johnson before Mantooth Brothers rented it from the appellee.

The appellant testified that he rented about thirty acres of the place in controversy from Thornton Mantooth for the year 1911, and about the 1st of August, 1911, he told Thornton Mantooth that he wanted the whole place for the year 1912. Thornton said, "Well, I will let you know right away. I am satisfied I will make a deal, and let you have it. I am thinking of renting out my other place, too. I will let you know about it later on." About two weeks afterward witness entered into a contract with Thornton Mantooth by which witness rented the place from him, with the understanding that witness was to cultivate it, and Thornton Mantooth was to furnish the teams and tools and one-half of the ferriage, etc., to market the crop, and witness was to give him (Mantooth) one-half of the proceeds. Witness did not know anything about the appellee's renting the place to the Mantooth Brothers until a few days before New Year's. Appellee sent him notice to give possession. He did not give possession until the end of the suit, when the court gave judgment against him, and that he appealed the case. He went to see appellee about the notice to surrender possession which she had given the witness, and she said: "Well, I told Thorn when he rented, the day after

he rented it to you, that I didn't see that there was much in it for us that way.''

Witness's further testimony was in regard to the damages he claimed to have sustained, which, in the view we have taken of the case, it is not necessary to set forth.

The testimony of witnesses on behalf of appellant tended to corroborate the testimony of the appellant as to the contract between him and Thornton Mantooth for the rent of the land for the year 1912. One of these witnesses testified that he could not remember the details of the agreement, but if he understood it right, Mrs. Mantooth owned the land. She was not present, and witness did not know whether she ever agreed to the contract or not.

Other witnesses on behalf of the appellant testified to the effect that they rented land owned by appellee for the years 1911 and 1912 from Thornton Mantooth. The land rented by these witnesses was not the land in controversy. Another witness testified that in the years 1911, 1912 and 1913 he bought timber from Thornton Mantooth on the land belonging to appellee. The timber came off of the land that appellant occupied.

In rebuttal, one of the witnesses testified that in August or September, while appellant was on the land in controversy, she had a conversation with him about the land and heard Johnson say he had the land for the next year. Witness told Johnson that Mrs. Mantooth was not going to let him stay, and Johnson replied that he had made a contract with Mr. Mantooth, and it would have to stand; that he didn't make any contract with Mrs. Mantooth.

M. M. Stuckey testified that after the death of appellee's mother, Thornton Mantooth, her husband, did not have anything to do with the land, and was not the agent of the appellee. Witness was her agent to rent the land in controversy, and he rented the same for the year 1912. The papers and note evidencing the rent contract between Mantooth Brothers and the appellee were drawn in his office, and he collected the rents.

At the conclusion of the testimony, both parties presented prayers for instructions, but it is not necessary to

set these out. The jury returned a verdict in favor of appellant for $700. The appellee filed a motion for a judgment in her favor notwithstanding the verdict. The record recites that the court treated the motion as a motion for a new trial and sustained the same, entering an order granting appellee a new trial. The appellant at the time excepted and prayed an appeal to the Supreme Court, consenting that judgment absolute should be rendered against him in case the judgment of the trial court granting appellee a new trial be affirmed, as provided by statute.

*Otis W. Scarborough* and *Jno. W. & Jos. M. Stayton,* for appellant.

1. The court erred in setting aside the verdict, and in granting a new trial, because there was some evidence to show that appellee rented the land to appellant through her husband and agent, Thornton Mantooth. The authority of an agent may be shown by circumstantial evidence. 93 Ark. 600. When a principal becomes aware of the act of the agent, if it is not to be ratified, the act must be promptly repudiated. Story on Ag., § 253, p. 297; 31 Cyc. 1275 *et seq.;* 11 Ark. 207.

*Stuckey & Stuckey,* for appellee.

1. New trials are in the sound discretion of the lower courts. The court properly set aside the verdict and granted a new trial because there was no substantial legal evidence to support the verdict. There was no competent evidence that the husband was the agent of the wife, the owner of the land, or had any authority to rent the land to appellant. Final judgment should be entered here for appellee.

WOOD, J., (after stating the facts). Appellant contends that the ruling of the court in granting the appellee a new trial was erroneous because there was some substantial evidence tending to show that appellee rented the land to the appellant for the year 1912 through her husband and agent, Thornton Mantooth.

Conceding, without deciding, that there was testimony from which the jury might have found that appellee

rented the land to appellant for the year 1912 through her husband, Thornton Mantooth, acting as her agent, and that there was substantial evidence to sustain such verdict, still it does not follow that the court erred in granting the motion for a new trial. Counsel for appellant frankly say that "it may be admitted that the evidence of the authority of Thornton Mantooth to act as the agent of his wife is not strongly proven by direct testimony." Certainly it can not be said that there was no conflict in the testimony on this point. On the contrary, if there was any competent testimony to show that Thornton Mantooth was the agent of his wife to rent the land in controversy for the year 1912, and that as such agent he did rent the land to appellant for the year 1912, there was certainly direct and decided testimony conflicting with this and to the effect that he was not her agent, and did not rent her lands to appellant for the year 1912.

In *Blackwood* v. *Eads*, 98 Ark. 304, we quoted the following from the Supreme Court of Missouri: "The Supreme Court will not, where there is substantial conflict in the evidence, review the action of the trial court in granting a new trial because the verdict is against the weight of the evidence." See cases there cited.

In *McDonnell* v. *St. Louis, S. W. Ry. Co.*, 98 Ark. 334, page 336, we said: "It is not invading the province of the jury for the trial judge to set aside its verdict where there is a conflict in the evidence. On the contrary, it is the duty of the trial court to set aside a verdict that it believes to be against the clear preponderance of the evidence. But it should not, and the presumption is that it will not, set aside a verdict unless it is against the preponderance of evidence. This court will not reverse the ruling of the lower court in setting aside a verdict where there is substantial conflict in the evidence upon which the verdict was rendered, but will leave the trial court to determine the question of preponderance."

And in *McIlroy* v. *Arkansas Valley Trust Co.*, 100 Ark. 596-599, after referring to the above cases, the court said: "There was a decided conflict in the testimony, and we can not say that the trial court erred in its conclusion

that the verdict was against the preponderance of the evidence or abused its discretion in setting it aside. * * * It is difficult to determine where the preponderance of the testimony lies, and we certainly are unable to say that the conclusion of the trial judge is against the preponderance." See, also, *Taylor* v. *Grant Lumber Co.*, 94 Ark. 566.

Under the testimony in this record, there was no abuse of discretion on the part of the trial judge in setting aside the verdict and granting a new trial, and in accordance with the stipulation on the part of appellant, and in pursuance of the statute (Kirby's Digest, section 1188, subdivision 2, and section 1238), final judgment will be rendered here in favor of the appellee.