STANLEY *v.* CALICO ROCK ICE & ELECTRIC COMPANY.

4-8334                                   205 S. W. 2d 841

Opinion delivered November 24, 1947.

*Ernie E. Wright* and *Oscar E. Ellis,* for appellant.

*Dene H. Coleman,* for appellee.

MINOR W. MILWEE, Justice.    Appellant, Alta May Stanley, brought this action as the natural guardian and next friend of her minor daughter, Maxine Shipman, against appellee, Calico Rock Ice & Electric Company,

to recover damages for the death of Sam Shipman, the father of Maxine. Sam Shipman was divorced from appellant, Alta May Stanley, in 1939. Appellant, Lela Shipman, is the widow of Sam Shipman, deceased, and the stepmother of Maxine Shipman. She was made a defendant in the complaint of Alta May Stanley, and filed a pleading in which she adopted the allegations of the complaint and asked for judgment against appellee.

The complaint alleged that Sam Shipman was electrocuted on August 5, 1945, because of the negligence of appellee, as follows: "That said defendant was negligent in permitting a defective transformer to exist and remain unrepaired in the vicinity of the place where the deceased was constructing his home. The exact nature of the defects being to plaintiffs unknown. That by reason of such defective transformer and negligence on the part of the defendant a dangerous amount of electric current highly in excess of 110 volts was permitted to flow through the line leading to the deceased's garage and into the electric cord; and this highly excessive amount of current caused the deceased's death.

"That the defendant, Calico Rock Ice & Electric Company, Incorporated, knew, or by the exercise of ordinary care should have known, that said transformer was defective and dangerous and that the condition existing constituted a menace and danger to the lives and property of many people, including the deceased, in the vicinity of such transformer. The defendant, Calico Rock Ice & Electric Company, Incorporated, was negligent in its failure to properly repair or replace the defective transformer and in permitting a dangerous and excessive amount of current to flow into the wires upon deceased's premises and the negligence of said defendant was the direct and proximate cause of the deceased's death."

The answer of appellee denied the allegations of the complaint and pleaded contributory negligence on the part of the deceased.

At the close of the testimony on behalf of appellants and at the conclusion of all of the testimony, the trial

court denied a request for an instructed verdict in favor of appellee. The jury returned a verdict for appellant, Alta May Stanley, in the sum of $2,500 and for appellant, Lela Shipman, in the sum of $500. Appellee then filed a motion for a judgment in its favor notwithstanding the verdict. The trial court treated this motion as a motion for a new trial and sustained the same, entering an order granting appellee a new trial. Pursuant to the provisions of § 2735 of Pope's Digest, appellants excepted and filed notice of appeal, consenting that judgment absolute should be rendered against them in this court, if the order granting appellee a new trial should be affirmed.

The order of the trial court granting the motion for a new trial does not state the specific ground upon which such action was taken. Since, however, the effect of the motion filed by appellee is to allege the insufficiency of the evidence to sustain the verdict, we must affirm the action of the trial court, if it can be supported on this ground. *Hall* v. *W. E. Cox & Sons,* 202 Ark. 909, 154 S. W. 2d 19.

For reversal of the judgment sustaining the motion for a new trial appellants say in their brief: ". . . . if there is such evidence in this record as would have caused this Court to affirm this case if the appeal had been by the appellee, who was the defendant below against whom the verdict of the jury was returned, this case will now be reversed because the verdict was supported by sufficient evidence and the court below was in error in holding otherwise and ordering a new trial." In the cases cited by appellant in support of this argument the trial court had overruled, instead of granting, a motion for a new trial by the defendant. The trial court thus gave its approval to the judgment by refusing to grant a new trial on the ground that the verdict is contrary to the evidence. In such cases this court has uniformly upheld the verdict where there is any testimony of a substantial character to support it. The same rule is not applicable, however, where the trial court has found that the verdict of the jury is against the pre-

ponderance of the evidence and has sustained the motion for a new trial, as in the case at bar.

The case of *Wilhelm* v. *Collison*, 133 Ark. 166, 202 S. W. 28, involved an appeal by plaintiff from an order granting a motion for a new trial filed by defendant, and the court said: "We are not called upon to pass upon the legal sufficiency of this testimony to support a verdict based upon it, because the court below granted a new trial pursuant to the prayer of a motion therefor, which assigned as a ground therefor that the verdict of the jury was contrary to the preponderance of the evidence. We have many times said that the trial court should grant a motion for a new trial when convinced that the verdict of the jury was clearly against the preponderance of the evidence. *Mueller* v. *Coffman*, 132 Ark. 45, 200 S. W. 136; *Twist* v. *Mullinix*, 126 Ark. 427, 190 S. W. 851. And when the trial court reaches that conclusion and takes that action we have announced as a rule governing us in our review of that action that 'this court will not reverse a decision of the trial court granting a new trial on the weight of the evidence unless it appears that there has been an abuse of the discretion in setting aside the verdict which is sustained by the clear preponderance of the evidence.' *McIlroy* v. *Arkansas Valley Trust Co.*, 100 Ark. 599, 141 S. W. 197."

In *McDonnell* v. *St. Louis S. W. Ry. Co.*, 98 Ark. 334, 135 S. W. 925, this court said: "It is reversible error for the trial court to direct a verdict for one party where there is any substantial evidence to warrant a verdict for the other party. The trial court can not take from the jury its prerogative to determine disputed questions of fact. *St. Louis, I. M. & S. Ry. Co.* v. *Petty*, 63 Ark. 94, 37 S. W. 300; *Wallis* v. *St. Louis, I. M. & S. Ry. Co.*, 77 Ark. 556, 95 S. W. 446; *State* v. *Caldwell*, 70 Ark. 74, 66 S. W. 150; *Hutchinson* v. *Gorman*, 71 Ark. 305, 73 S. W. 793; *LaFayette* v. *Merchants' Bank*, 73 Ark. 561, 84 S. W. 700, 68 L. R. A. 321, 108 Am. St. Rep. 71; *Neal* v. *St. Louis, I. M. & S. Ry. Co.*, 71 Ark. 445, 78 S. W. 220; *Crawford* v. *Sawyer & Austin Lbr. Co.*, 91 Ark. 337, 121 S. W. 286.

"But that is a different question from the one under consideration. It is not invading the province of the jury for the trial judge to set aside its verdict where there is a conflict in the evidence. On the contrary, it is the duty of the trial court to set aside a verdict that it believes to be against the clear preponderance of the evidence. But it should not, and the presumption is that it will not, set aside a verdict unless it is against the preponderance of evidence. This court will not reverse the ruling of the lower court in setting aside a verdict where there is substantial conflict in the evidence upon which the verdict was rendered, but will leave the trial court to determine the question of preponderance. *Taylor* v. *Grant Lumber Co.*, 94 Ark. 566, 127 S. W. 962; *Blackwood* v. *Eads*, 98 Ark. 304, 135 S. W. 922."

In *Johnson* v. *Mantooth*, 120 Ark. 99, 179 S. W. 175, the trial court treated a motion for judgment notwithstanding the verdict as a motion for a new trial which was granted, as in the instant case, and this court held (to quote a headnote): "The action of the trial court in granting a new trial on the ground that the verdict is not supported by the evidence, is not reviewable on appeal, where it appears that there is a substantial conflict in the testimony."

In *Twist* v. *Mullinix, supra*, Justice WOOD, speaking for the court, said: "The only tribunal, under our judicial system, vested with the power to determine whether or not a verdict is against the preponderance of the evidence is the trial court. Where there is a conflict in the evidence and the trial court finds that the verdict, upon a material issue of fact, is against the preponderance of the evidence, the logical and necessary result of such finding as matter of law is that the verdict must be set aside; otherwise, it would be impossible to correct the error."

In the recent case of *Clark* v. *Gill*, 206 Ark. 267, 174 S. W. 2d 679, we said: "It is the duty of the trial court, if there is a substantial conflict in the evidence as to negligence, to submit the question to the jury for its

determination; but, if the jury returns a verdict which, in the opinion of the trial court, is against the preponderance of the evidence, it is his duty to set it aside and grant a new trial on the motion of the losing party.'' The same rule is announced and followed in many cases which are cited in Crawford's Civil Code of Arkansas, p. 306.

This brings us to a consideration of the question whether the trial court abused its discretion in holding that the verdict of the jury was against a preponderance of the evidence and granting the motion for a new trial. We will not attempt to detail the testimony of each witness, but a brief summary of the evidence will suffice to demonstrate that no abuse of discretion on the part of the trial court is shown.

Sam Shipman was a mechanic and had constructed a garage and part of a new home on his lots in the town of Calico Rock. He installed the electric wiring in his garage which was connected with a distribution line running from a transformer serving 25 other customers of appellee. The primary line leading from the power source to this transformer carried 2300 volts. It was the function of the transformer to reduce the voltage to 110 on the distribution lines to the various service connections. There was a severe rain and electrical storm on the night of August 4, 1945, and fuses of the transformer which were blown out were replaced early the next morning and service restored.

About 9:30 a. m. August 5, 1945, Sam Shipman connected one end of a long 250 volt extension cord with a socket in his garage, picked up the other end of the cord and proceeded to drag it out of the garage, intending to connect it to another cord attached to an electric pump in the yard. Shipman was holding the metal connection points of the cord in his left hand and when he had walked a few feet outside the garage he was electrocuted. A thumb and one finger were burned and there were also burns on his buttocks and one heel. When Shipman received the shock he fell to the ground clinging to the end of the cord which was pulled from his hand. Shipman's widow testified that the ground was dry where

deceased fell, but other witnesses on both sides testified the ground and grass were wet from the hard rain on the previous night. There was a sharp dispute in the evidence as to whether deceased's clothing was also wet.

An electrical expert of 19 years' experience testi-fied that Shipman could have come to his death from a current of 110 volts under the conditions existing at the time he received the shock; that he knew of death result-ing from an electric shock of 97 volts under similar con-ditions; and that a high voltage tends to knock one loose from the wires, while a lower voltage tends to paralyze and hold one to the wires. He also testified that a cur-rent of 220 volts would burn out light bulbs and blow the fuses in the switch box in Shipman's garage.

The local manager of the power company testified that he replaced the blown out fuses in the transformer after examining the wiring. The company had no equip-ment to test the transformer, but he ascertained that lights were burning in the nearest house after replacing the blown out fuses. He took the transformer down after Shipman's death and found no defect in it. The oil had become a little dark, but was still in good condition. The oil was changed and the transformer later placed in serv-ice, without further repairs, at another location in Calico Rock.

Several witnesses for appellants whose homes were served by the same transformer testified that they re-ceived shocks on the morning Shipman was killed. Ship-man's mother testified that she received a shock when she turned on a radio. One witness felt a tingle in his fingers when he touched the outside of an empty light socket and another received a severe shock when she pulled a chain attached to a light socket. Another wit-ness received a shock from touching the metal roof of his home, while pulling some wet vines from the roof in the afternoon following the death of Shipman. There was also evidence that a wet tree was burned where the insulation was worn from a wire which was rubbing against the tree. There was no evidence of a light bulb burning out or damage to other electrical appliances, and

none of the fuses were blown out in the switch boxes of the 26 connections served by the transformer in question. The testimony on behalf of appellee was to the effect that the shocks received by the witnesses for appellants could have occurred from a current of 110 volts on the distribution wires supplying their homes.

The burden was upon appellants to show by a preponderance of the evidence that Shipman's death was proximately caused by the negligence of appellee in maintaining a defective transformer which permitted an excessive amount of electric current to be carried through the line to the deceased's garage. From a consideration of all the testimony we are unable to say that the trial court acted arbitrarily, or abused his discretion, in finding that the verdict of the jury was contrary to a preponderance of the evidence, and in granting a new trial.

The judgment is, therefore, affirmed and judgment absolute in favor of appellee will be rendered here in pursuance of the stipulation of appellants under § 2735 of Pope's Digest, *supra*.