THUDIUM *v.* DICKSON.

4-9324                                  235 S. W. 2d 53

Opinion delivered December 18, 1950.
Rehearing denied January 22, 1951.

*John Baxter* and *DuVal L. Purkins,* for appellant.

*Jim Merritt* and *Gibson & Gibson,* for appellee.

DUNAWAY, J.  Appellee Dickson rented a part of a plantation in Chicot County owned by appellant, Mrs. Evelyn Thudium, for the purpose of producing a rice crop in the year 1948.  In this action he sought and recovered damages for loss sustained by him because of a partial crop failure which he alleged resulted from not having available the necessary and agreed supply of water when needed to irrigate the rice crop.

Complaint was first filed on February 10, 1949, alleging in substance a breach of contract to furnish an adequate supply of water in time to produce a normal crop. He sued both appellant and the Layne-Arkansas Company, a well-drilling concern of Stuttgart, Arkansas. The rent contract was set out in the complaint, and it was alleged that appellee did not know which of the defendants was primarily liable to him.  On June 27, 1949, an amended complaint was filed against both defendants in which the rent contract was again set out; and it was alleged that appellee had been induced to enter into this contract by the fraudulent representations of appellant concerning the water supply.  Only the amended and substituted complaint and the pleadings filed in response thereto need be discussed.  Appellee dismissed as to Layne-Arkansas prior to the trial.

In view of the contentions here of both parties, it will be necessary to quote somewhat extensively from the complaint. It was alleged that appellee was a rice farmer of many years experience, who prior to April 1, 1949, had lived in Monroe County where he engaged in rice farming; that negotiations during the first three months of 1948 resulted in the execution of the following contract between appellant and appellee:

"This contract made and entered into by and between Mrs. Evelyn W. Thudium, party of the first part, and W. M. Dickson, party of the second part.

"Whereas, the party of the first part is the owner of what is known as Yellow Bayou Plantation in Chicot County, Arkansas, and has rented to W. M. Dickson four to five hundred acres of land to be planted in rice for the year 1948, and it is mutually agreed between the parties as follows:

"1. W. M. Dickson agrees to plant in rice at least 350 acres of land, and not more than 500 acres, on land mutually agreed upon between the parties.

"2. The party of the first part has had test wells made by Layne-Arkansas of Stuttgart, and has contract with them to make sufficient water available for a minimum of 350 acres of rice and have contracted to make this water available before it is needed for the rice.

"3. All surveying and building of levees is to be done by the party of the second part at his own expense. Should a dragline be required as the only alternative in the handling of the water, then the expense of same is to be handled by the party of the first part.

"4. The party of the second part is to plant and harvest the rice in a business-like manner and to convey same to the drier. The rice is to be divided four-fifths to the party of the second part and one-fifth to the party of the first part. The rice is to be placed in the drier under construction at McGehee. Should the McGehee drier not be built in time to receive the crop, then the party of the first part is to pay such additional expense

for hauling as may be required to place the rice in some other drier or mill.

"5. It is agreed that the party of the first part will furnish the actual cost of poisoning weeds in the rice, said cost not to exceed $2.00 per acre. The party of the first part shall have the privilege of selecting the kind of poison and the time same may be used, and it is understood that this will release the party of the second part of any responsibility on account of said poisoning. The poisoning is to be done in the usual manner and before the weeds have produced seed.

"The term of this contract shall be for the year 1948. It is understood by the parties that when the rice grown in the year 1948 has been harvested that the party of the second part will return to the possession of the party of the first part the lands planted in rice.

"Witness our hands this................day of April, 1948.

"/s/ Evelyn W. Thudium
Party of the First Part.

"/s/ W. M. Dickson
Party of the Second Part."

Plaintiff alleged that beginning April 10, 1948, he planted four tracts of land in rice on the "Yellow Bayou" plantation as follows: "First" crop, "approximately 50 acres"; "Second" crop, "approximately 90 acres"; "Third" crop, "approximately 100 acres"; "Fourth" crop, "approximately 125-130 acres." He alleged that normal production on these lands would have been 70 bushels per acre or 25,900 bushels of rice, whereas the total actual production was only 7,900 bushels. This loss in production was alleged to have been due to failure on the part of appellant to have a supply of water available when required.

To quote from the complaint:

"The loss sustained by the plaintiff as detailed hereinbefore was caused as follows:

"(a) The defendant, Mrs. Evelyn Thudium represented in PART 2 of the contract that she had test wells

made by Layne-Arkansas Company and that she had contracted with them to make sufficient water available for a minimum of 350 acres of rice and had contracted to make this water available before it was needed for the rice. The plaintiff believed and relied upon said representations and done and performed the acts and things and made the investments and expenditures as hereinbefore set out in this pleading. The defendants, failed to furnish water, sufficient water or water in time to make said crop. The plaintiff is advised and therefore states that the defendant, Mrs. Evelyn W. Thudium did not have such a contract with the Layne-Arkansas Company, and that the said representations were false and fraudulent and by reason of said false representations induced this plaintiff to enter into this said contract and do and perform the acts and things, make the investments and expenditures and suffer the loss of a crop as hereinbefore more specifically set out.''

This allegation and the allegations as to the cause and extent of the loss are repeated in various forms in the complaint.

On August 15, 1949, appellant filed a. ''Motion to Strike'' various designated paragraphs, sentences and phrases of the complaint ''for the reason each and all are redundant, repetitious, and irrelevant''. At the same time appellant filed a demurrer on the ground that no cause of action was stated. On September 28, 1949, a pre-trial conference was held at which time appellee moved to dismiss the cause as to Layne-Arkansas. The court granted this motion subject to the right of appellant to file a cross-complaint against Layne-Arkansas if she desired. This was not done.

Appellant, on October 10, 1949, filed an answer, in which she denied all the material allegations of the complaint. She specifically denied any false or fraudulent misrepresentations, and denied that she was in any way at fault for the crop failure. She further pleaded estoppel in that a contract with Layne-Arkansas for drilling the required wells was ultimately made at the instance of Dickson and with his knowledge and consent.

After appellant had been granted a continuance because of illness of one of her attorneys, also a witness, a "Motion to Elect" was filed on December 29, 1949. By this motion appellant sought to have appellee "elect . . . whether the amended and substituted complaint under its allegations is intended to state a cause of action for an alleged breach of the contract of the ......... day of April . . . or is it an attempt to state a cause of action in tort for the alleged fraudulent misrepresentations of Evelyn W. Thudium". The court did not rule on this motion prior to the trial.

At the trial of the cause on January 10, 1950, the issues submitted to the jury were whether appellant was guilty of fraudulent misrepresentations as alleged; and if so, whether the crop loss was due to appellant's not having water available at the proper time or due to appellee's own improper construction of canals and levees for distribution of the water; and whether on the facts appellee was estopped to claim any damages.

The jury returned a verdict for the plaintiff for $17,500. After hearing on the motion for new trial, in which it was urged among other things that the damages were excessive and not supported by the evidence, the court reduced the verdict to $11,325.60. From the latter action, the appellee has cross-appealed.

Appellant's motion for new trial contained thirty-nine assignments of error. The grounds urged by appellant for reversal may be discussed in four groups: (1) Failure of the trial court to sustain the "Motion to Elect", (2) Admission of prejudicial incompetent testimony, (3) Error in instructions given and refused, (4) Sufficiency of the evidence to sustain the verdict.

These facts were clearly established from the evidence: Before the rent contract was entered into, appellant and appellee had several conversations relative thereto. John Baxter, who was acting as attorney and adviser to appellant, exchanged letters with appellee in February, 1949, with regard to the terms and conditions

of the proposed contract. These letters, insofar as pertinent to the issues on this appeal, are quoted:

(Baxter to Dickson—February 10).

"I called Mrs. Thudium this morning and she agreed to your proposition about the rice. The agreement as I understand it is about as follows:

"1. She wants you to plant at least 350 acres of rice, and up to 500 if possible.

"2. She is to make the water available for you either by well or out of the bayou.

"3. You are to do all surveying, building of levees and building of canals at your own expense. Of course, if there are any dragline canals to be dug in making the water available, that will be Mrs. Thudium's expense.

.  .  .  .  .  .  .  .

"Since talking to Mrs. Thudium this morning, I am rather inclined to believe that she ought to put down a big well if possible instead of depending on the bayou. I would like very much for Mr. Powell to look at this situation and see what ought to be done as soon as it dries up so you can get around.

"Mrs. Thudium is leaving town next Sunday and will be gone for about ten days.

"If this agreement is satisfactory with you, you can let me know, and Mrs. Thudium will begin to make arrangement about the water supply."

(Dickson to Baxter—February 12).

"I am in receipt of your letter dated February 10th, in regard to agreement with Mrs. Thudium about the rice.

"To take up this agreement as outlined:

"1. She wishes me to plant up to 500 acres of rice and I will agree to plant up to 400 acres of rice, providing there will be ample water supply to take care of the 400 acres properly.

"2. I would suggest that she furnish the water from a deep well rather to attempt to supply the water from

the bayou, as this would leave the bayou available for additional water supply as I understand that 300 acres in that territory will require about 5,000 gallons of water per minute and the additional 100 acres would raise this requirement to about 6,000 gallons of water per minute. In the event that the deep well would not furnish sufficient water supply for the acreage agreed upon, Mrs. Thudium would agree to furnish additional supply from the bayou.

. . . . . . . .

"I plan to be down again in the near future and if at all possible I will try to have Mr. Powell along to look over the situation of the well, and that no doubt Mrs. Thudium will have returned to Lake Village and the well agreement can be reached as I will expect the water supply to be available at the time it is needed."

On April 1, 1948, Mr. Baxter wrote Dickson as follows and attached the rent contract set forth above:

"I have drawn a contract and I hand you herewith the original. It has not been approved and signed by Mrs. Thudium. I have talked to her over the telephone and this seems to be about what she wants, and I think this will be agreeable to you.

"If you want any corrections or additions made to this contract we can work these out when you come down here and both of you can sign the contract."

Shortly after April 1, appellee moved to Chicot County, and began his farming operations on appellant's lands, having arranged for the necessary financing and acquired needed equipment. He began preparation of the first land for planting about April 9, and planted the first rice within the next day or two. He then planted the rest of the crop on the entire four tracts, completing the planting by May 11, or thirty-one days from the first planting.

Appellee had already moved to Chicot County and begun planting the crop on "Yellow Bayou" plantation before the rent contract with appellant was signed by

the parties. The testimony is in conflict as to when each of them actually signed the instrument, but it is clear that both parties had done so by April 17. Since appellant knew appellee was proceeding under their agreement, the exact date of execution of the contract is immaterial, and it was conceded in oral argument that whenever signed it was referable to April 1.

Upon appellee's recommendation, appellant had engaged Layne-Arkansas to drill several test wells on her property with a view to putting down permanent wells for irrigation of the rice crop. Four test wells were first drilled, on March 26, 27, 29 and 30. Appellee knew this when he started putting in his crop. Later, according to her testimony, appellant had Layne-Arkansas put down additional test wells, in an effort to locate a satisfactory water supply nearer the rice fields. This second group of test wells was drilled April 28, 29 and 30.

About May 1, or 2, according to appellee, he first learned that appellant might not have a definite contract with the drillers for the necessary wells, as he had understood appellant had represented to him. He then went to Stuttgart and found such to be the case. On May 5, following a conference with appellee and a representative of Layne-Arkansas, appellant signed a contract with this company to drill wells guaranteed to have the required capacity. The wells were located at the site of the first tests, made in March. Drilling began on May 11, one well being completed about May 21 and the last one on May 27.

Appellee's testimony was that crop No. One needed water about April 23, and the other three tracts at various intervals thereafter, depending upon the time of planting and growth on each. After the water became available from the wells, it developed that some of the canals and ditches first constructed were inadequate to raise the water to a level high enough for distribution over all the fields. The court ruled that under the terms of the rent contract this was appellee's responsibility and at the conclusion of the trial sustained appellant's

demurrer to the extent that appellee was claiming any damages on this account.

From all the testimony it is clear that a substantial crop loss resulted from the lack of a water supply when needed and from appellee's improper construction of canals and ditches. The testimony as to the extent of the loss and the relative responsibility of the parties for this loss is in conflict, and will be discussed in connection with the contentions of the parties for reversal on appeal and cross-appeal.

Was appellant prejudiced by the court's refusal to sustain either in advance of, or at, the trial, her "Motion to Strike" or "Motion to Elect"? The "Motion to Strike", as already stated was based upon the redundancy of the complaint, and we can see no error in the trial court's action as to this motion. Before the "Motion to Elect" was filed, appellant had answered denying any fraudulent misrepresentations. The complaint set forth in great detail the facts upon which appellee was basing his claim of fraud, and the damages he was seeking as a result of the alleged fraudulent misrepresentation of appellant.

The issues being tried in the case were made perfectly clear at the commencement of the trial, if they were not already clear from the pleadings. When objection was made to a question asked just after the second witness for plaintiff began to testify, the court made this statement to counsel for appellee:

"As I understand it, you are bringing an action against Mrs. Thudium because she did not furnish the water necessary to make this crop or led your client to believe that she had sufficient water and didn't in fact have it; upon that is your lawsuit and upon that your evidence will be confined."

The case was submitted to the jury under proper instructions as to the burden of proof and all the elements plaintiff was required to establish before he could recover in an action based on fraud. As to measure of damages the court instructed the jury as follows:

"If under all of the facts in the case and instructions of the Court you find for the plaintiff, W. M. Dickson, the measure of damages will be four-fifths of the market value of what the land would have produced if the water for irrigation purposes had been furnished, less four-fifths of the market value of what the land actually did produce, deducting from this difference the amount it would have cost to produce, harvest and market the crop that would have been produced if water for irrigation purposes had been furnished, not taking into consideration any damages that Dickson may have sustained by reason of any lack of water on account of defective canals or levees."

This measure of damages is the same as would have been applied had the instant action been one simply based upon breach of contract. *Gibson* v. *Lee Wilson & Company*, 211 Ark. 300, 200 S. W. 2d 497.

Appellant has not shown that she was prejudiced in any way either by the failure of the trial court to earlier rule on the "Motion to Elect" or by the ruling when made. Had she pleaded surprise at any of the proof adduced a different question might be presented. Instead it appears that the case was fully developed on both sides. There is no showing that any witness who might have had information concerning the issues involved was unavailable to testify. In the circumstance of this case, we think appellant's contention in this connection is without merit.

We next consider appellant's argument that certain prejudical testimony was admitted. Objection was made to the Baxter-Dickson letters and other testimony concerning the negotiations preceding the final rent contract of April 1. In permitting the introduction of these letters, the court instructed the jury that the final contract was binding upon the parties and could not be varied in so far as it covered any specific item. As to the supplying of water there is no conflict between the conditions set forth in the letters and in the contract as finally executed. Appellee's cause of action was based upon the alleged misrepresentation as to water supply, and his

reliance thereon. The evidence objected to was admissible to show why he went into possession of the leased lands and began his crop before the contract was actually signed.

Objection was also made to certain testimony concerning customs prevailing in rice-farming operations. It was shown that rice-growing was comparatively new in Chicot County. Such testimony undoubtedly aided the jury in understanding what to them was a new enterprise, and since the testimony in no way conflicted with the obligations of the parties under the contract, there was no prejudice in its admission.

Appellant also complains of testimony that appellee borrowed about $25,000 in connection with his farming operation for 1948. We think this testimony was admissible to show that he was adequately financed and prepared to make the rice crop he claimed he would have made. In addition, when one witness, appellee's wife, was testifying as to this item, the court specifically instructed the jury to disregard such testimony in considering the issue of damages. No request for any further admonition to the jury was made. We see no error in this regard.

We have also concluded that there was no error committed in the giving or refusal of instructions. Appellant's main contention as to instructions is that the above-quoted instruction on measure of damages does not adequately point out to the jury that plaintiff could not recover for any crop loss caused by his own defective construction of canals, ditches and levees. These additional instructions requested by the defendant were given on the point:

"If you find from the evidence the failure, if any, of Dickson's rice crop was due not to an insufficiency of the water supply but his failure to properly survey or construct the canals and levees so as to distribute the water available to the places needed in the rice fields,

then your verdict will be for the defendant, Evelyn W. Thudium."

and

"Even if you find from a preponderance of the evidence in this case it was the duty of Mrs. Evelyn W. Thudium to make the water available for the rice when Dickson needed it and she failed to perform in this respect; if you further find the loss in the crop could have been avoided by Dickson in the exercise of an ordinarily prudent rice grower by properly constructing the levees and canals at the proper grades and levels so as to distribute the water, or in any other way, then Mrs. Thudium is not liable for any loss or damage to the rice crop which could have been reasonably prevented by Dickson."

These instructions adequately covered the point and the court was not required to give all the repetitious instructions requested.

Only one other requested instruction, refused by the court, will be discussed specifically. It reads:

"You are instructed, under no circumstances can Dickson recover any damages for loss of Crop No. 3, or that portion of Crop No. 4, which the evidence has established was due to Dickson's own conduct, and in no event more than sixty per cent of his alleged loss on any particular crop."

This instruction was evidently requested because of testimony that most of Crop No. Three and a part of Crop No. Four could not have been saved even if water had been available at the wells, since canals were never constructed which could have carried adequate water to flood the fields. Appellee testified in great detail as to the damage to each of the four crops. As to all tracts, his testimony was that the crop was at least fifty per cent damaged before water was available from the wells. Then on cross-examination, appellee answered this question:

"Q. I want you to consider carefully before answering this next question. Will you tell the jury to the best

of your ability just how much of this that you said was the loss of this crop was due to the water not being there available before May 26 or 27, and then how much was due to the condition or failure of conditions of the levees or levels or the banks of those canals; tell just how much was due to one and how much was due to the other? A. I would say about sixty/forty.''

This estimate of the relative responsibility for loss was given in relation to the entire crop. That necessarily took into account Crops No. Three and Four. It would have been error for the court to instruct the jury to deny recovery entirely as to part of the crop and then limit to sixty per cent the possible recovery as to the balance of the land.

We find no error in the instructions.

On the question of the sufficiency of the evidence to sustain a finding of fraud on the part of appellant, we agree with the earnest argument of counsel that the jury might have disbelieved any fraudulent intent on her part. On the other hand the matter was submitted to the jury under proper instructions on this issue. She did not have the contract with Layne-Arkansas which she represented she did have. The jury apparently found that the representation was fraudulently made.

The final question for decision is on appellee's cross-appeal. In reducing the verdict, the court made this statement:

''. . . under the evidence the Court feels like that the jury should have been bound by the instructions of the Court and held its verdict within the evidence produced and not speculative evidence, but concrete absolute evidence, and following that giving to the plaintiff everything he claimed in his complaint of 25,900 bushels, less the difference in 70 bushels and 57.9 bushels per acre, less the forty per cent, less one-fifth of the crop for rent, which would leave a net of 6,864 bushels loss by the plaintiff at $1.65 per bushel, which is $2.00 a bushel, less the cost of harvesting, transportation and drying, would leave a net loss of $11,323.60, which is the highest possible

sum that the jury could have possibly given the plaintiff under the evidence in this case as the Court sees it, and unless a remittitur to that effect is granted, the judgment will be set aside and a new trial granted.''

It is argued that the verdict was supported by the preponderance of the testimony and that the court's finding upon which the reduced judgment was based is against the preponderance. In considering the trial court's action in reducing the verdict the rule is as stated in *McDonnell* v. *St. Louis Southwestern Ry. Co.*, 98 Ark. 334, 135 S. W. 925; ''. . . it is the duty of the trial court to set aside a verdict that it believes to be against the clear preponderance of the evidence. But it should not, and the presumption is that it will not, set aside a verdict unless it is against the preponderance of evidence. This court will not reverse the ruling of the lower court in setting aside a verdict where there is substantial conflict in the evidence upon which the verdict was rendered, but will leave the trial court to determine the question of preponderance.'' See, also, *McIlroy* v. *Arkansas Valley Trust Co.*, 100 Ark. 596, 141 S. W. 196; *Stanley* v. *Calico Rock Ice & Electric Co.*, 212 Ark. 385, 205 S. W. 2d 841.

In the case at bar there was substantial conflict in the testimony. The county agent's testimony was that the 1948 average rice production per acre in Chicot County was 57.9 bushels. Various witnesses estimated that appellee's production under normal conditions would have been from 70 to 80 or 85 bushels. The trial judge saw and heard the witnesses testify, and undoubtedly his estimate of their credibility entered into his determination of where the preponderance of the evidence lay. Under the rule above-quoted, we cannot say that his determination of this question was an abuse of discretion.

It is also argued that the trial court erred not only in holding 60 bushels per acre to be the anticipated yield, but in his determination of the number of acres planted by appellee. It is true that the testimony as to the planted acreage varied all the way from 350 to around 380. But it is obvious from the court's statement that no specific

finding on this point was made. The court took the maximum potential production claimed by appellee in his complaint—25,900 bushels. This had been based upon an estimated production of 70 bushels per acre. From this total the court deducted the difference between 70 bushels and 60 bushels per acre, which was the maximum supported by the trial court's view of the preponderance of the evidence. There was no error in this, for we have held that the amount stated in the complaint measures the maximum recovery. *Turner* v. *Smith,* 218 Ark. *ante,* p. 441, 231 S. W. 2d 110, and cases therein cited.

Affirmed on direct appeal and cross-appeal.